JOHANNA HOGAN v. ATLANTIC ELEVATOR COMPANY.[1]

November 27, 1896.

Nos. 10,186—(98).

### Chattel Mortgage—Growing Crop—Notice.

The filing of a chattel mortgage on a growing crop of grain continues to be constructive notice to all the world, although the grain is threshed and removed from the land on which it was raised.

### Same—After-Acquired Property.

Ludlum v. Rothschild, 41 Minn. 218, followed, as to the effect of a chattel mortgage on property not then owned, but to be thereafter acquired, by the mortgagor.

### Same—Ownership.

*Held*, that there was no evidence that the mortgagor ever became the owner or acquired any interest in the property purporting to be covered by the mortgage.

[1] Reported in 69 N. W. 1.

**Same—.Bona Fide Purchaser.**

> Also, that the fact that the defendant bought the grain for an. adequate consideration, in the usual course of business, was prima facie evidence that it was a purchaser in good faith, in the absence of any opposing, suspicious circumstances, and that the burden was on the plaintiff, who claimed under a chattel mortgage, to show that it was executed in good faith.

**Conversion—Demand and Refusal.**

> Refusal to restore goods on demand is only evidence of a conversion, and, whenever a conversion can be otherwise proved, it is not necessary for a plaintiff to prove a demand and refusal.

Appeal by defendant from an order of the district court for Stearns county, Searle, J., denying a motion for a new trial after a verdict in favor of plaintiff for $206.90. Reversed.

Appellant's sixth assignment of error, referred to in the opinion, was as follows: "The trial court erred in charging the jury as follows: 'In this connection, however, I charge you that if you believe there was a settlement between the agent, representing the elevator company, and Mr. Wendtlant, representing the mortgagor, for wheat that came from this land, if you believe that the elevator company settled with him for any more wheat than these two loads as coming from this piece of land, that would be an admission on the part of the agent of the elevator company which would bind the elevator company in this case as to where the wheat came from.'" Defendant excepted to that portion of the charge relating to a settlement had between Wendtlant and Wuttke and the agent of the elevator company, and especially to that portion in which the court stated to the jury that this would be taken as an admission against the elevator company that so much wheat had been received. Whereupon the court stated: "I will qualify that as to the admission. You may take that into consideration in determining the amount of the wheat."

*Wilson & Van Derlip*, for appellant.

*Geo. H. Reynolds*, for respondent.

MITCHELL, J. This was an action for the wrongful conversion of a quantity of wheat, of which the plaintiff alleged she was the owner and entitled to the possession. The basis of plaintiff's claim to the property was a chattel mortgage executed November 15, 1893, by one Wuttke to the Bank of Melrose, on "all the wheat, &c., which shall be

sown, grown, raised, and harvested during the season of 1894 on sec tions No. 33 and 34, township 123, range 33," to secure payment of a note for $175 and interest, due October, 1893. The mortgage was duly filed. On the trial the plaintiff introduced evidence for the purpose of proving that, after the wheat covered by the mortgage was threshed, it was hauled to Lintonville, and sold to the defendant, at its elevator.

1. The defendant makes the point that "a chattel mortgage upon a growing crop should not be construed to be a lien upon the grain when severed and removed from the premises." In other words, the contention is that in view of the fact that the property is left in the possession of the mortgagor to harvest and thresh, and that, after it is removed from the land where raised, it bears no earmarks by which it can be identified, therefore, as to purchasers of the grain, we should apply a rule somewhat similar to that of the common law in sales in market overt, as seems to have been done in Gillilan v. Kendall, 26 Neb. 82, 42 N. W. 281. The law is settled otherwise in this state by Close v. Hodges, 44 Minn. 204, 46 N. W. 335, in accordance with the great weight of authority. Jones, Chat. Mortg. § 69.

The English custom of markets overt is not recognized in this country. Whether the necessities and policy of commerce require any modification of the law of chattel mortgages as to property which, like growing crops, is left in the possession of the mortgagor, the form of which he may change, and which, when thus changed, is incapable of identification by inspection, is a question for the legislature, and not the courts. The general principle applicable to the law of personal property is that no one can transfer any better title than he himself has, and the statutory law as to chattel mortgages is that filing constitutes constructive notice to all the world.

Where a valid chattel mortgage has been filed, a purchaser of the property from the mortgagor can obtain title free of the incumbrance only when the conduct of the mortgagee amounts to an express or implied authority to the mortgagor to sell the property, or has been such as equitably to estop him from denying that he had given the mortgagor such authority. Grain must necessarily be harvested when it is ripe, and, in the course of husbandry, is usually threshed and marketed, or stored, soon afterwards. But mortgagees of growing grain frequently pay no attention to the property after the execution of

the mortgage, practically leaving the whole matter of harvesting, threshing, and the subsequent disposition of the grain to the mortgagors, and then, if he pays the debt out of the proceeds, well and good; but, if he does not, then the mortgagees seek to recover the property, or its value, from the purchasers from the mortgagor. There are doubtless cases where the conduct of the mortgagees in that regard might establish implied authority to the mortgagors to sell, or, at least, estop the mortgagees, as against innocent purchasers, to deny such authority. But no such question is presented by the record in this case.

2. The further point is made that there was no evidence that at the time the mortgage was executed the mortgagor was in possession of, or had any interest in, the land on which this grain was raised, and, hence, that the grain had not even a potential existence, and was incapable of being the subject of a mortgage. This is fully disposed of by the case of Ludlum v. Rothschild, 41 Minn. 218, 43 N. W. 137, in which this court went entirely beyond the doctrine of "potential existence," and adopted the rule in equity, holding that where parties, by their contract, in clear terms express an intention to create a mortgage lien upon personal property, not then owned, but to be subsequently acquired, by the mortgagor, whether then in being or not, the mortgage attaches as a lien on the property as soon as the mortgagor acquires it.

3. Another point is that the evidence was insufficient to justify a verdict in favor of the plaintiff because it failed to show (1) that the grain which defendant bought was raised on the land described in the mortgage; or (2) that the mortgagor, Wuttke, owned the grain, or had any interest in it. An examination of the evidence satisfies us that this point is well taken, as to the second specification.

Taking the evidence of Wendtlant and Hitchcock together, we think it can be fairly inferred from it that 550 bushels of the wheat raised on the land described in the mortgage were purchased by the defendant; but we fail to find any evidence that would furnish a sufficient basis for the conclusion that this grain belonged to Wuttke, the mortgagor, or that he had any interest in it; and, of course, he could not mortgage anything but his own interest.

It appears that Wuttke farmed this land, and raised a crop on it, in 1894. If the evidence had stopped there, this would be prima facie

evidence that he owned the crop. But it further appears that Wendtlant owned the land, and that Wuttke "operated" the land under some agreement with him; but what the terms of that agreement were nowhere appears. It appears that, after the grain was threshed, Wendtlant hauled about one-third of it to his own home, and one load to Lintonville, to the defendant's elevator, and some he stored in a granary. Assuming that 550 bushels were hauled to Lintonville and sold to the defendant, it nowhere appears by whom, or at whose instance, any of it, except the one load, was taken there. All that appears is that, after it was hauled, Wendtlant and Wuttke went to the elevator to see how many bushels there were; that Wendtlant obtained the tickets for it, sold them to the defendant, and drew the money on them, out of which he paid the threshing bills and a seed-grain note (by whom executed does not appear), and paid the balance ($177.09) to Wuttke. On what account, or why, he paid this to Wuttke, does not appear. What disposition was made of the balance of the grain not sold to the defendant or taken by Wendtlant to his own home nowhere appears. For anything that the evidence discloses, Wendtlant might have been the owner of the entire crop, and Wuttke merely his employé, who was to receive for his services a fixed sum of money, or a certain portion of the proceeds of the grain after it was sold by Wendtlant.

The evidence was insufficient to sustain the verdict.

4. It appears that the defendant bought this grain in the market, in the usual course of business, and paid for it. This constituted prima facie evidence that the defendant was a purchaser in good faith, in the absence of any opposing, suspicious circumstances. Wright v. Larson, 51 Minn. 321, 53 N. W. 712. Upon this state of facts, the burden was on the plaintiff to prove that her mortgage was executed in good faith. There was no evidence on that point, and for that reason, also, the verdict cannot be sustained.

5. The instruction of the court to the jury referred to in the sixth assignment contained error prejudicial to the defendant, and we doubt whether the modification subsequently made by the court went far enough to correct the error, but we only refer to the matter here with reference to a new trial.

6. Upon the point that a demand on defendant for the grain was necessary, we need only refer to what was said in Adams v. Castle,

64 Minn. 505, 67 N. W. 637.    Refusal to restore goods on demand is only evidence of a conversion; and wherever the conversion can be otherwise proved, by showing a wrongful disposition of the property, it is not necessary for the plaintiff to prove a demand and refusal.

There is nothing in the point that there was no evidence of any breach of the conditions of the mortgage.    The possession and production of the note by the plaintiff was prima facie evidence that it had not been paid, and one of the conditions of the mortgage was that the mortgagee might take possession of the property in case of an attempt by the mortgagor or any one else to remove or dispose of it.

But, for the reasons already given, the order appealed from is reversed and a new trial ordered.