GEORGE H. PARTRIDGE v. MINNESOTA & DAKOTA ELEVATOR COMPANY.

February 2, 1899.

Nos. 11,412—(233).

### Chattel Mortgage—Purchase from Mortgagor—Consent of Mortgagee.

A purchaser of chattels from the mortgagor, upon which there is a mortgage, takes his title free of the lien, if the sale was made with the authority or consent of the mortgagee. Such authority need not be in writing. It may be express or implied from the conduct of the mortgagee with reference to the mortgaged property.

### Same—Conversion of Wheat—Evidence—Question for Jury.

Evidence considered, and *held,* that it was sufficient to require the sub-

mission of the case to the jury upon the issue whether the mortgagee consented to the sale in question by the mortgagor.

Action for conversion in the district court for Clay county. The case was tried before Baxter, J., who directed a verdict in favor of plaintiff in the sum of $2,731.77. From an order denying a motion for a new trial, defendant appealed. Reversed.

*Wilson & Van Derlip*, for appellant.

*Fred B. Dodge*, for respondent.

START, C. J.

Action for the alleged conversion by the defendant of certain wheat, upon which the plaintiff had a mortgage. Defense that the defendant purchased the wheat, in the usual course of business, from the mortgagor, who was then authorized by the mortgagee to make the sale. At the close of the evidence, the defendant requested the trial court to direct a verdict in its favor, which was refused; and thereupon the court directed a verdict for the plaintiff for the amount claimed. The defendant appealed from an order denying its motion for a new trial.

The only assignment of error we find it necessary to consider is the one to the effect that the trial court erred in so directing a verdict. It was admitted on the trial that the plaintiff had a mortgage on the wheat; that the defendant had notice thereof; and that it purchased the wheat of the mortgagor, and refused to deliver the same, or to account therefor to the plaintiff. It follows that the instruction of the trial court was correct, unless there was evidence in the case tending to show that the plaintiff expressly or impliedly authorized such sale; but, if there was such evidence, it was error for which a new trial must be granted. A purchaser of chattels from the mortgagor, upon which there is a mortgage, takes his title free of the lien of the mortgage, if the sale was made with the authority or consent of the mortgagee. Such authority need not be in writing. It may be express or implied from the conduct of the mortgagee with reference to the mortgaged property. Hogan v. Atlantic El. Co., 66 Minn. 344, 69 N. W. 1; Jones, Chat. Mort. § 465; 5 Am. & Eng. Enc. (2d Ed.) 996.

After an attentive consideration of the record, we have reached

75 M.—32

the conclusion that there was evidence tending to support the contention of the defendant that the plaintiff authorized the mortgagor to sell the wheat in question, and pay the debt secured thereby from the proceeds of the sale, sufficient to take the case to the jury.

The chattel mortgage was made by James Shea to the plaintiff upon the crops growing and to be grown upon a certain farm in his possession, to secure the payment of $3,000. The wheat in controversy was a part of such crop. The plaintiff employed an agent, Mr. Nye, to look after the harvesting, threshing and putting the wheat in a granary or elevator. There was evidence tending to show that the mortgagor, the latter part of September, 1897, with the knowledge and consent of the agent, placed the wheat in the defendant's elevator, taking tickets or receipts therefor in his own name; that a part of the tickets were marked "Mortgaged," and the whole thereof was left in the possession of the defendant's agent, in charge of the elevator, at the request of the mortgagor. In reference to this transaction, Mr. Nye testified that it did not make any difference to him whether the mortgagor turned over the tickets, or whether he sold them, and turned over the money. The mortgage debt matured October 7, 1897, and on October 27 the mortgagor wrote to the plaintiff that he had wheat enough in the elevator to settle his claim, but stated that he did not like to sell then, as he expected a better price, to which the plaintiff replied to the effect that he believed the wise course was for the mortgagor to close out the property at once, and pay his debts. November 2 the mortgagor wrote to Mr. Nye, plaintiff's agent: "I will sell this crop when the price is where I think it is right." This letter was forwarded to the plaintiff, who, November 4, wrote to the mortgagor, stating among other matters:

"We must insist upon your disposing of sufficient wheat at once to take care of the pool matter [the mortgage debt], or else secure the money from some other source, as we will not under any circumstances permit the matter to continue as it has any longer. * * * We shall expect to hear from you at once, and trust that you will see fit to authorize Mr. Nye to dispose of sufficient of the crop to make a complete settlement with your creditors."

December 14 the mortgagor wrote the plaintiff that he could not

pay more than $2,000 of the debt, and asking that the balance be extended until the next year. The correspondence shows that the plaintiff at first declined to entertain any proposition for an extension of the time of payment of any part of the debt. But there was evidence tending to show that negotiations were subsequently pending for the present payment of $2,000 of the debt, and an extension until the next year of the remaining $1,000, to be secured by the mortgagor's note, with indorsers, and that Mr. Nye, in response to an inquiry from the defendant's elevator agent, told him that a settlement had been virtually made on that basis; that thereupon the elevator agent paid the mortgagor $1,000 in cash, and a check for an amount sufficient, with a check previously given to him, and then in his possession, to make $2,000, in settlement of the purchase price of the wheat; that, in fact, the wheat had been sold some three days before this conversation with Mr. Nye and subsequent payment of the balance of the purchase price. The mortgagor did not turn over the checks aggregating $2,000 to the plaintiff or his agent, but died February 21, 1898, leaving the mortgage debt unpaid. There was also other evidence given on the trial tending to controvert or explain some portions of that to which we have referred; but, upon the whole evidence, it was a question of fact for the jury whether the mortgagor was authorized to sell the wheat in question, and the trial court erred in directing a verdict for the plaintiff.

Order reversed, and a new trial granted.

CANTY, J. (dissenting).

I cannot concur in the foregoing opinion. It is true as a general rule that, if a sale of chattels by the mortgagor is made with the consent of the mortgagee, the latter, by consenting, waives his lien. The general rule is that, by consenting to the sale, the mortgagee impliedly consents that the mortgagor may receive the purchase money. But custom or the course of business may change this rule.

Every one knows that it is customary all over the wheat-growing portions of this state for the mortgagor to haul mortgaged wheat to the elevator, and store it, with notice to the elevator keeper that the wheat is mortgaged. The elevator keeper issues tickets or

receipts for the wheat, and marks them, "Mortgaged." Then the mortgagor and the mortgagee agree upon a time when the former shall sell the wheat. But no one understands that the consent of the mortgagee that the mortgagor may thus sell wheat stored in an elevator, with notice to the elevator keeper that it is mortgaged, implies consent that the mortgagor shall receive the price of the wheat. No elevator keeper who understands his business would ever think of acting on any such implied consent, or anything less than the express consent of the mortgagee that the mortgagor might receive the purchase money. Without the consent of the mortgagor, the mortgagee cannot sell mortgaged chattels at private sale, unless he has possession of them; and, even if he has possession, he is guilty of conversion for selling them without such consent. Then it is easy to understand why the mortgagee of wheat stored in an elevator, as this wheat was, must appeal to the mortgagor to sell the wheat, or proceed to replevy the same, and foreclose his mortgage. Usually, the mortgagee does much of this appealing. The mortgagor stores the wheat during the threshing season, takes the receipts marked "Mortgaged," proposes to hold the wheat for a better price, asks the mortgagee to consent to this, and there is between them just such parleying over the matter as there was in this case. But no one understands that, by urging the mortgagor to sell in such a case, the mortgagee intends to release his chattel mortgage, or authorize the elevator keeper to pay the money to the mortgagor when the wheat is sold.

The opinion of Mr. Nye, given in his testimony on the trial, that it did not make any difference to him whether the mortgagor turned over the tickets, or whether he sold them, and turned over the money, was the mere conclusion of the witness, and not evidence. Besides, it does not appear that Nye had authority to waive or release this mortgage without receiving payment thereof. In my opinion, the order appealed from should be affirmed.