LIVINGSTON AND SCHALLER, Appellants, v. IRA STEVENS, Appellee.

**Chattel Mortgages:** SPECIAL INTERROGATORIES. It is not error to refuse special interrogatories, respecting a matter concerning which there is no controversy.

**Where a Writing May be Varied by Parol.** The rule excluding parol evidence of the agreement of parties, where there is a writing , does not apply to actions between a party to the contract and a stranger.

**Evidence:** COURSE OF DEALING. In an action by a mortgagee to recover mortgaged cattle where it is contended there had been a waiver of the mortgage lien, evidence of a course of dealing between the parties tending to constitute such waiver, is admissible.

**Waiver:** ESTOPPEL. A chattel mortgagee may waive his lien and a purchaser will take the property free from the incumbrance, though the same is not discharged in writing, as neither written evidence nor a consideration are required to support a waiver or an estoppel.

**Chattel Mortgage:** DESCRIPTION OF PROPERTY. In an action by a mortgagee to recover mortgaged property, the question of

whether the mortgage contains a description sufficient to identify any property is one of law for the court, but whether the property in dispute is covered by the mortgage, is one of fact for the jury.

*Appeal from Shelby District Court.*—HON. O. D. WHEELER, Judge.

*SATURDAY, MAY 16, 1903.

ACTION to recover specific personal property. Trial to a jury, verdict and judgment for defendant, and plaintiffs appeal.—*Affirmed.*

*Cullison & Robinson* for appellants.

*Byers & Lockwood* for appellee.

DEEMER, J.—The action was to recover thirty-seven head of yearling steers under a mortgage executed by one J. M. Tucker to the plaintiffs, who are live-stock men, doing business at South Omaha, Neb. But thirty-two head of cattle were taken under the writ issued in the case, and the controversy is over these thirty-two head. The mortgage under which plaintiffs claim, which was executed by Tucker September 19, 1899, described the animals as follows: "One hundred and twelve (112) head of cattle as follows: One hundred and four (104) head of yearling steers now averaging 605 pounds and eight (8) head of two year old heifers now averaging 775 pounds and all of above cattle branded thus 'U' on left hip. And all natural increase of stock. The average weight of said cattle is now 605-775 pounds. This mortgage is given to secure payment of purchase money. The above stock being all of the kind now owned by me, and are in my undisputed possession free from all liens and incumbrances and kept on my premises on Section No. 16 in Township of Union, Range No. 45, in Shelby County, Iowa; being the same purchased this 19th day of September, 1899, of Liv-

*NOTE. This case and the one following are published out of chronological order because of proceedings for rehearing.—REPORTER.

ingston and Schaller. The party of the first part hereby agrees to at once put said stock and cattle on first class feed of corn, hay and water, and keep them on such food while any part of the debt secured hereby remains unpaid and until said stock and cattle are put in a merchantable condition and sold. The said mortgagor agrees to consign said stock and cattle when marketed to Livingston and Schaller, or whomsoever the said party of the second part, or the representatives, successors or assigns of said party shall direct at South Omaha, Nebraska, to be sold on Commission." It was duly recorded in the office of the recorder of deeds of Shelby county, Iowa, September 22, 1899. Defendant, Stevens, purchased the cattle in controversy of Tucker, and had them in his possession at the time the writ of replevin was issued.

Defendant denied that they were covered by plaintiff's mortgage, pleaded that the description contained in the mortgage was insufficient, and further alleged that plaintiffs, by their conduct and manner of dealing with Tucker, had waived their lien, in that they gave him permission to sell the cattle, or that they knew he was selling them and made no objection thereto, but, on the contrary, received part of the proceeds of the sales, and thus ratified all that he did. He also pleaded an estoppel based on plaintiff's conduct with reference to the stock. The case was submitted to the jury on these issues, which returned a verdict for defendant, and also returned the answers indicated to the following special interrogatories: "Interrogatory 1. Didn't the plaintiffs, Livingston and Schaller, know on the 19th day of September, 1899, that the yearling steers branded on the left hip with the letter 'U,' that day sold by them to J. M. Tucker, were to be taken to Harlan, Iowa, to be sold? Answer. Yes. Int. 2. Did the plaintiffs know that Tucker was selling the hundred and four head of steers bought by him of plaintiffs on September 19, 1899? Answer. Yes. Int. 3. Did the

plaintiffs give Tucker permission to sell the hundred and four head of steers bought by him of plaintiffs on September 19, 1899? Answer. Yes. Int. 4. Was J. M. Tucker in possession of the cattle in controversy in Shelby county, Iowa, at the time the defendant Stevens purchased them of him? Answer. Yes. Int. 5. Did the plaintiffs or W. I. Stevens know that any of the money paid to them by J. M. Tucker was from the proceeds of the sales of the cattle described in plaintiffs' mortgage dated September 19, 1899? Ans. Yes. Int. 6. Did the defendant Stevens refuse to surrender the cattle in controversy to plaintiffs before the commencement of this action? Answer., Yes. Int. 7. Did the plaintiffs or Stevens know of the sales of any part of the cattle described in the mortgage of September 19th, 1899, before they were disposed of by Tucker? Answer. Yes. Int. 8. Did the defendant, Stevens, purchase of J. M. Tucker on the 26th day of September, 1899, thirty-two head of the cattle which said Tucker bought from plaintiffs on September 19, 1899? Answer. No. Int. 9. What was the value per head of the cattle in controversy at the time they were taken by plaintiffs under the writ of replevin in this case? Answer. $30. Int. 10. When did plaintiffs or W. I. Stevens first know that Tucker was selling the one hundred and four steers bought by him of plaintiffs on September 19, 1899? Answer. September 28th. Int. 11. Did the plaintiffs or W. I. Stevens know of the sale by Tucker of any part of the cattle covered by their mortgage of July 26, 1899, when on the 19th day of September, 1899, they sold Tucker the one hundred and twelve head of cattle named in their mortgage of that date? Answer. Yes."

It is undisputed that the cattle in controversy were never on section 16, Union township, Shelby county, Iowa, and it is further shown without conflict that Tucker never owned or had possession of any part of said section 16.

The cattle, when purchased by defendant, were in the stockyards of the Chicago, Rock Island & Pacific Railway Company at Harlan, in Shelby county, Iowa, part of them having been shipped there directly from South Omaha, and part having been brought from the town of Defiance, in Shelby county, to which point Tucker had made another shipment of cattle purchased by him of plaintiffs in July of the year 1899. On September 26, 1899, defendant purchased thirty-eight head of the cattle, which were in the stock yards at Harlan, and thirty-two of these cattle are the cattle in controversy.

Most of the special interrogatories we have quoted were requested by plaintiffs, and they have no cause for complaint because of the submission thereof. In all, they asked twenty-one interrogatories and a great number of these were refused. The answers to those submitted seem to have some support in the evidence and these answers are not, as counsel assumes, such as to indicate passion or prejudice on the part of the jury.

Refusal to give No. 14 asked by the plaintiffs is seriously complained of It reads as follows: "Was any of the cattle bought by the defendant, Stevens, on September 26, 1899, from J. M. Tucker, purchased by said Tucker from plaintiffs on the 19th day of September, 1899?" Had there been any controversy over this proposition, no doubt, it would have been error for the court to refuse it. But there was no dispute that part of the cattle purchased by defendant from Tucker were of the lot purchased by Tucker from plaintiffs on September 19th. At any rate, no prejudice resulted, because the answers to the other special interrogatories taken in connection with the court's charge, clearly show that plaintiffs were not entitled to recover any of the cattle. This will become more apparent as we proceed. The other interrogatories asked, so far as proper and material, were

1. SPECIAL interrogatories.

substantially submitted to the jury. Some of them were incompetent under recent decisions of this court. See *Morbey v. R. R.*, 116 Iowa, 84, and cases cited. *Runkle v. Ins. Co.*, 99 Iowa, Iowa, 414.

II.   Plaintiffs further contend that there is no evidence to support the answer to interrogatory No. 5, relating to the receipt by plaintiffs of part of the money received by Tucker from the sale of cattle to defendant. In this we cannot agree with counsel. To set out the evidence from which such a conclusion might fairly be reached would be of no importance to the parties or to the public; hence we follow our usual custom of announcing conclusions only.

III.   Next, it is contended that evidence of negotiations and agreements had between plaintiffs and Tucker, before the making of the mortgage on September 19th, was incompetent and immaterial, because all such were merged in the mortgage, and parol evidence of such prior arrangements is incompetent. If the action were between the parties to the mortgage, this objection would, no doubt be good. But the rule excluding parol proof where there is a written contract or agreement does not apply to actions between a party to the contract and a stranger. Manifestly, such stranger is not to be concluded thereby. He had no part in the making of the contract and third parties cannot bind him by an instrument to which he is not a party. This is fundamental doctrine although frequently overlooked by courts and counsel, and in its support we need only cite *Evans v. Wells*, 22 Wend. 345; *Fuller v. Acker*, 1 Hill, 473; Greenleaf, Evidence, section 279; *Lee v. Adsit*, 37 N. Y. 78; *Furbush v. Goodwin*, 25 N. H. 446; Bradner on Evidence, section 27, page 335, and cases cited. Moreover, the evidence to prove the agreement was not objected to; hence there was no error in any event.

Defendant was also allowed to prove prior and subsequent transactions between plaintiffs and Tucker, wherein

plaintiffs permitted Tucker to sell mortgaged property,

**3. EVIDENCE: course of dealing.** and to account for the proceeds, thus waiving their mortgage lien. This evidence was all objected to as irrelevant. As it tended to show a course of conduct or system of dealing between these parties, we think it was admissible. The evidence tended to show that Tucker was a young man between twenty-five and thirty years of age; that he had no property or money, as plaintiffs knew; that he proposed to buy cattle of the plaintiffs, to ship them out into western Iowa, and there sell them to the farmers, paying for them with the proceeds of his sales; that he made mortgages to the plaintiffs on the cattle he purchased, but that plaintiffs agreed to withhold these mortgages from record until he could dispose of part or all of the cattle; that plaintiffs and Tucker had had previous dealings, in which Tucker had been permitted to sell mortgaged cattle and to account for the proceeds; that he (Tucker) had purchased of plaintiffs, shipped into western Iowa, and sold to farmers, more than six hundred head of cattle, and that he had in each instance accounted for the proceeds, all without any objection from the plaintiffs. To establish this system or course of dealing, we think the evidence complained of was admissible. *Kelliher v. Sutton*, 115 Iowa, 632; *Zimmerman v. Brannon*, 103 Iowa, 144. Gillett on Indirect and Collateral Evidence, section 51, and cases cited.

Further, it is contended that, if there was any release of plaintiffs' mortgage lien, such release should have been in writing, and, in any event, that to be of any validity it

**4. WAIVER: estoppel.** must have been supported by a consideration. If the action were between the parties to the instrument, no doubt this would be the rule. But it is not. Defendant's defense is not bottomed on a release of the mortgage lien, but upon a waiver of that lien or upon an estoppel. Neither such waiver nor an estoppel requires written evidence, nor need either be supported by a con-

sideration.   A waiver may be established by circumstances surrounding the transaction or by evidence of a general course of dealing between the parties. *Pratt v. Maynard*, 116 Mass. 388.   If a mortgagee consents to a sale of the property by the mortgagor, the purchaser takes title free from the lien. *Partridge v. Minnesota and D. Elevator Co.*, 75 Minn. 496 (78 N. W. Rep. 85).   Waiver differs from estoppel in this: that the purchaser from the mortgagor need not know, when he makes his purchase, that the mortgagee has given his consent to the sale. *Stafford v. Whitcomb*, 8 Allen, 518.

IV.   Appellants contend that the court did not fairly submit the issues made by the respective parties in a clear and concise manner, but, on the contrary, copied long and verbose pleadings, and nowhere pointed out the exact matters in dispute.   It is true that the court substantially copied the pleadings; but in other portions of the charge the exact matters in dispute were clearly stated, and no prejudice resulted from failure to state in a short and perspicuous manner the exact points presented by the pleadings.

Complaint is also made of the fourth instruction, which reads as follows: "If you find from the evidence, by the greater weight thereof, that the plaintiffs, at the time of the sale of the cattle in question to Tucker, and of the execution of the mortgage in suit, knew that it was the purpose and intent of Tucker to ship said cattle out to Iowa and sell the same, for the purpose of procuring money with which to pay the purchase price thereof, and with such knowledge made such sale to him, and took such mortgage from him in contemplation of the sale of said cattle by said Tucker, then you may infer that the plaintiffs consented to such sale, and by such acts waived the lien of their mortgage; or, if you find from the evidence, by the greater weight thereof, that the plaintiffs, at the time of the sale of said cattle and the execution of said

mortgage, orally consented to the sale of said cattle by
Tucker, you will find that they waived the lien of their
said mortgage." This is said to be erroneous because it
permits the jury to ignore the written mortgage, which is
the only competent evidence as to the agreement between
the parties, and conclusive of the alleged waiver. What
we have heretofore said sufficiently answers this conten-
tion. Defendant was not a party to the instrument, and
it is clear that he may show the exact agreement between
the parties notwithstanding the fact that they made the
mortgage under which plaintiffs now claim the cattle.

In the third instruction the court said that the plain-
tiffs must show that the cattle in controversy or a part
thereof, were included in and covered by the mortgage of
5. CHATTEL  September 19th, and that, if they failed in
mortgage:  this, they could not recover. This instruc-
description
of property.  tion is not complained of, but the court pro-
ceeded with instructions 5 and 6, which are challenged.
They read in this wise:

"(5) It is not claimed that defendant, Stevens, had
any actual knowledge of the existence of the plaintiffs'
mortgage. He is therefore a 'subsequent purchaser with-
out notice,' within the meaning of section 2906, which
reads as follows: 'No mortgage of personal property
where the mortgagor retains actual possession thereof is
valid against subsequent purchasers without notice, unless
a written instrument conveying the same is executed,
acknowledged like conveyances of real estate and filed for
record with the recorder of the county where the holder
of the property resides.' And unless he is charged with
record or constructive notice of said mortgage his purchase
would be superior to and free from lien of plaintiff's mort-
gage. Constructive or record notice is such notice as is
presumed to be imparted by recording with the proper
county a properly drawn and properly acknowledged in-
strument. It is conceded that Tucker was a resident of

Shelby county, Iowa, and therefore the chattel mortgage in question was recorded in the proper county. It was a properly acknowledged instrument. The remaining question to be determined is whether or not the chattel mortgage was properly drawn. To be properly drawn it must contain a sufficient description of the property intended to be mortgaged. If the description of the property be not sufficient, the recording of the mortgage will not constitute notice. The description contained in the mortgage in question, on the face thereof, appears to be sufficient in law. It is for you to determine whether it is sufficient in fact, from the evidence in the case.

"(6) The defendant claims that the description contained in the mortgage is not sufficient in fact. To be sufficient in fact, the description must be such that a third person may take said mortgage, and from the facts therein stated, and inquiries therein suggested, and such only, can identify the property covered by said mortgage with certainty. A description is sufficient which enables a third party, aided by the inquiries which the instrument itself suggests, to identify the property covered by it. If it directs the mind of the inquirer to facts or evidence from which he may ascertain the mortgaged property with certainty, it is sufficient. When a mortgage contains a description, part of which is true and part false and erroneous, that which is false or erroneous may be stricken out as redundant or superfluous, and the description will be sufficient if enough remains to lead a third party, by the inquiries it suggests, to the indentification of the property covered by it. You are to take the mortgage in question, and, under, the rules above announced, ascertain whether the property described in it, under the evidence before you, can be thus identified. If it can thus be identified, the description is sufficient, and the recording of the chattel mortgage in question constituted constructive notice to the defendant of the existence of said mortgage, and his purchase

of the cattle in controversy was subject to the lien thereof. If you find that the description in said mortgage is sufficient under the rules set forth, you will find for the plaintiffs as to such property in controversy as you find covered by said mortgage, unless you should further find the plaintiffs have waived the lien of their mortgage as above indicated. If you find that the property described in the mortgage cannot be identified with certainty under the rules above given, and you find that the description is insufficient, then the recording of the mortgage in question would not constitute notice to defendant of the existence of said mortgage, and his purchase of the cattle in controversy was free from and superior to the claims of the plaintiffs under their mortgage, and you will find for the defendant."

The exact contention here is that, where the description in the mortgage is sufficient to authorize its reception in evidence, the identity of the property claimed with that described in the mortgage is a question for the jury, but that the sufficiency of the description to render it competent evidence is for the court; or, as said in *Chipman v. Weiny*, 112 Iowa, 702: "It was for the jury to determine whether the parties intended to include the property in the mortgage; and it was for the court to say whether the description was sufficient to impart notice of such intention to a third party." Generally speaking, this is the rule. See *Andregg v. Brunskill*, 87 Iowa, 354.

In the instructions quoted, the court held that the description was sufficient in law, and it admitted the mortgage in evidence. This was, in effect, a holding that the mortgage on its face contained a good description. But the question as to whether or not it was a sufficient description in fact, in view of the evidence offered to identify the property, was left to the jury. In view of the facts with reference to the location of the property before and at the time plaintiffs purchased it, and the evident misdescription of the place where such cattle were

to be found, it became a question for the jury, in view of this extrinsic evidence, to determine whether or not the description, aided by the inquiries which the instrument itself suggested was sufficient to identify the property. While our previous cases on this subject seem to be in a little confusion, we think that while it is ordinarily true that the matter of sufficiency of description in a mortgage is for the court to determine, as it did in this case, yet, when the evidence adduced to identify the property shows a misdescription rather than an insufficient one, the jury must determine whether or not it is sufficient, notwithstanding the false recitals, to put a purchaser upon sufficient inquiry to lead to a discovery of the property intended to be covered by the mortgage. Whether or not property can be identified in spite of inaccuracies of description is a question of fact for a jury. *Peterson v. Foti* 67 Iowa, 402; *Kern v. Wilson,* 73 Iowa, 490; *Stephens v. Tucker,* 55 Iowa, 543. When read in this light, there is no conflict in our cases. In the *Andregg Case, supra,* all that is held is that the sufficiency of a description in a mortgage to render it competent evidence is for the court; that is to say, the court must take the mortgage, and determine, from the description therein given, whether it is sufficient to describe any property. That is what the court did in this case. *Chipman's Case* contains the language we have quoted, but we expressly approved an instruction holding that it was a question for the jury to determine whether or not the property in controversy in that case was included in the mortgage. There, as here, the description contained in the mortgage was sufficient in law, and the trial court so determined, but left it to the jury to say whether or not the property in controversy was included in the mortgage. It was not a case of misdescription, but of intent to include the property in the mortgage. Whether or not an instrument, on its face, contains sufficient description to identify any property is

always a question for the court, but whether or not, being sufficient in law, it is sufficient to cover the property in dispute, where extrinsic evidence shows some mistake in the description, is a question for the jury under proper instructions. In *Peterson's Case*, 67 Iowa, 402, it is expressly held that the question as to whether the horse involved therein could have been identified from the de scription contained in the mortgage was one of fact to be determined by the jury.

Reduced to its last analysis, the question is really one of identity after all. The court finds the description contained in the mortgage is sufficient in law. Whether or not, in view of the extrinsic evidence offered, it covered the property in dispute, is a matter for the jury, and this relates to the matter of identity. See, as sustaining these conclusions, 6 "Cyc." page 1037, and cases cited; *Packers' Bank v. R. R. Co.*, 114 Iowa, 621; *Fisher v. Porter*, 11 S. D. 311 (77 N. W. Rep. 112); 1 Cobbey on Chattel Mortgages, paragraph 160.

We have now discussed all the points urged by counsel for a reversal, and, finding no prejudicial error, the judgment is AFFIRMED.