No. 25,060.

The First State Bank of Stafford, *Appellant,* v. The Independent Coöperative Grain and Mercantile Company, *Appellee.*

SYLLABUS BY THE COURT.

1. Mortgage—*Crop of Wheat—Mortgagee Authorized Mortgagor to Sell the Wheat—Sale Vests Purchaser with Title Free from Lien of Mortgage.* Where the mortgagee of a crop of wheat authorizes the mortgagor to thresh and sell the same and bring the proceeds of it to the mortgagee, a sale by the mortgagor vests the ownership of the wheat in the purchaser free from the lien of the mortgage.

2. Same—*Evidence—Mortgagor Authorized to Sell Crop of Wheat.* Evidence of the authority to sell the wheat is held to be sufficient to sustain the finding that the authority was given.

3. Same—*Other Alleged Errors Without Merit.* Other errors assigned are held to be without merit.

Appeal from Stafford district court; Daniel A. Banta, judge. Opinion filed March 8, 1924. Affirmed.

*Robert Garvin,* and *Evart Garvin,* both of St. John, for the appellant.

*John M. Martin,* of Hutchinson, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an action to enforce a chattel mortgage, given by J. P. Ricketts and wife upon a crop of growing wheat and which when threshed had been sold by Ricketts to the defendant. The defendant prevailed and plaintiff appeals.

The validity of the mortgage is conceded, and that it was a lien upon the crop is not denied. A part of the crop when threshed was sold to the defendant and its defense is that Ricketts was authorized by the plaintiff to sell the wheat and turn over the proceeds to plaintiff. Having that authority, it is contended that the sale to the defendant gave it the complete ownership of the wheat free from the lien of the mortgage. If the bank reposing confidence and trust in Ricketts empowered him to sell the wheat and bring the proceeds to it, his sale was just as effective in transferring title to the wheat as if the bank itself had made the sale to defendant. The result therefore depends upon whether or not this authority was given. The cashier of the bank testified that he never told Ricketts that he might sell the wheat. On the other hand, the manager of the defendant which purchased the wheat testified that when the bank demanded payment for the wheat they had purchased and disposed of, he interviewed the cashier and in the conversation the cashier admitted that he had authorized Ricketts to sell the wheat and bring the checks to the plaintiff bank. Three other witnesses said they had heard the cashier state that he had told Ricketts to sell the wheat and bring the proceeds to the bank, that Ricketts had brought part of the money to the bank but a part of the checks received he had deposited in another bank, and that Ricketts was on his way to settle with plaintiff the day that he was accidentally killed. When the cashier was asked as to what had been said by him to the several witnesses for the defendant, he stated, "I don't remember telling the witnesses that I authorized Mr. Ricketts to sell the wheat and bring the checks to me." The price of a part of the crop which had been sold by the mortgagor was brought to the defendant and credited to him. The sales were made in the ordinary course of business as were those made to the defendant. In this state of the evidence the finding of the jury that the authority was given, was not without support. It is said that the cashier must be regarded as a man of honor and integrity or he would not have been intrusted with the control and operation of the bank, and that his

testimony should have been accepted by the jury. It was the function of the jury to decide as to the probity of the witnesses and where the truth lay in the conflict of their testimony.

A contention is made that leading questions were asked and answered over objections, but it is clear that no prejudice could have resulted from these or from other rulings on the admission of testimony to which objections were made. It is also said that an instruction of the court to the jury to the effect that if they believed from the evidence that the mortgage was executed, delivered and recorded, it became notice to all the world of its terms and conditions, and must have misled the jury. It is said that the matters of execution, delivery and recording had been admitted by a stipulation of the parties and must have created a doubt in the minds of the jury as to these admitted facts and that they still remained open for inquiry during the trial. The part of the instruction referred to was preliminary in character and in it the jury were advised that having notice purchasers were not relieved from liability unless authority to sell had been given and could not have misled the jury. In fact the court told the jury that the execution and record of the mortgage had been admitted and there had been no contention during the trial as to either delivery or record of the mortgage.

Judgment affirmed.