OVERTON, J.
 

 Plaintiff instituted proceedings by executory process to foreclose three chattel mortgages, containing the pact de non alienando, granted by defendant on three automobiles. One of the automobiles was seized in the possession of Frank P. Boneo -and another in the possession of V.' Taormina & Co. The record does not disclose what was done as to the third. Boneo and Taormina
 
 &
 
 Co. intervened in the proceeding by executory process; Boneo alleging that he was the owner of the automobile seized in his possession ; that he purchased it from defendant; and had paid for it; that the chattel mortgage granted upon it is invalid; and in the alternative that, plaintiff having had knowledge that the automobile purchased from defendant by intervener was going to be sold, when he accepted the mortgage, and having stood by and permitted the sale of the ear, he is now estopped from asserting the mortgage against the car. V. Taormina & Co. has made similar allegations in its. intervention; the allegations in both interventions being substantially the same. Both interveners sued out writs of injunction to prohibit plaintiff and the civil sheriff from selling the seized automobiles.
 

 . The automobiles claimed by' interveners, had not been delivered to defendant, when the. mox*tgages on them were granted. When the invoices were received by defendant, the mortgages were executed. When the bill of lading arrived, with draft attached, plaintiff and one of the officials of defendant went to the bank, the money was advanced on the chattel mortgages, the draft was paid, and, the mortgages having been duly recorded, defendant, with the bill of lading in its possession, procured the automobiles, and placed them in its place of business for sale in the regular course of commerce. When plaintiff loaned defendant the money with which to pay the manufacturer for the automobiles, and accepted mortgages on them to secure the loans, he-
 
 *419
 
 knew that defendant intended to put the automobiles on sale in its place of business, and to sell them to any person who desired to purchase. Interveners purchased the automobiles while they were on display in defendant’s place of business, buying them' on terms of cash, at the usual prices^ and without being informed by anyone that they were mortgaged, and without suspecting that they were.' Plaintiff does not appear to have been present when the sales were made, nor to have known that interveners contemplated purchasing. Plaintiff had loaned money before to defendant, under similar circumstances, and had accepted mortgages on automobiles to secure the loans. In those transactions, if defendant sold the automobile mortgaged for cash, defendant usually, if not invariably, used so much of the money received as was necessary to pay the mortgage on the automobile sold, or, if defendant sold on credit,- it discounted the notes, and paid the mortgage out of the proceeds. In, this instance, however, it-does not appear that defendant paid the mortgages. Defendant, it may be said, has ceased to exist as a going concern. .
 

 Plaintiff unquestionably loaned the money to defendant for which the mortgages, which were executed by notarial act, were given. But the question arises whether automobiles, which are on display for sale, in a commercial establishment, or, which is practically the same, which are in transit, to be placed in the owner's and mortgagor’s place of. business to be sold, to the knowledge of the mortgagee, to whoever may desire to purchase, are susceptible of being validly mortgaged?
 

 Section 1 of Act No. 198 of 1918, which was in force when these mortgages were granted, and which section is still in force, reads as follows:
 

 “That.from and after the passage of this act it .‘shall be lawful to mortgage lumber, logs, Staves, cróss-ties,-bricks, live stock,-all kinds of vehicles and the equipment, accessories and parts thereunto belonging, all kinds of machinery, oil well casing, line pipes, drilling rigs, tanks, tank cars, iron and steel safes, adding machines, cash registers, musical instruments, store fixtures and shelving, buildings on leased ground, farming implements, tractors, slips, barges, dry docks or any kind of water crafts or materials to be used in the construction thereof and all other movable property not specifically named herein, for debts or for money loaned or to secure future advances, or to guarantee the performance of any other contractual obligations, by complying with the provisions of this act.”
 

 An. analysis of this section will show that the Legislature did not confine personal property, which might be validly mortgaged, to property, not held for sale to' the public. Thus, lumber, the very first species of property mentioned by the Legislature, is seldom kept by the-consumer in the form of lumber for any length of time, but is ordinarily kept in mill yards and lumber yards for sale, either to the retail dealer or to the general public. Staves and cross-ties are manufactured-, usually, perhaps, under contracts to sell, but nevertheless to sell, and are rarely held by the manufacturer for his own use. Automobile parts are usually not kept out of commerce for use, and, when so kept, are generally not kept in sufficient quantities to justify the giving of a chattel mortgage on them, but are generally found, in this state,, in places where they are kept for sale. When these facts are taken into consideration, it is impossible to escape the conclusion that the Legislature, in enacting section 1, had in mind property, both in and out of commerce, and that it was its intention to authorize the granting of mortgages on personal property, whether the property was being held for sale or not.
 

 Once concede, that property on display for sale, or while -in transit, to be placed immediately on sale, when received, is susceptible of-being mortgaged, the question as to whether the mortgage follows the property in
 
 *421
 
 to the^ands of a purchaser becomes merely a question of whether the laws relating to notice, assuming that the mortgage has been executed in proper form, have been complied with. This is so, because it is provided in section 2 of the Chattel Mortgage Act (Act No. 198 of 1918) as follows:
 

 “In order to affect third persons without notice, said instrument [referring to the chattel mortgage] must be passed by notarial act and the original or a certified copy thereof shall be recorded in' the office of the recorder of mortgages in the parish where the property shall then be situated, and also in the parish in which the mortgagor is a resident.”
 

 The two mortgages, in this instance, were executed by notarial acts; and-, prior to the time the interveners herein purchased, were recorded in the mortgage records of the parish of Orleans, where the property was situated, and where the mortgagor resided or was domiciled. Therefore, under the plain terms of the statute, the mortgages followed the property into the hands of interveners.
 

 Of course, the mortgagee by his representations and conduct may estop himself from asserting his mortgage against the property while it is in the hands of a third person. But such estoppel does not arise from' the fact that, when the mortgagee accepted the mortgages, he knew that the property was on sale, or was to be put immediately on sale, or even because the mortgagee expected ■ to be paid out of the proceeds of the sale when made. To hold otherwise as to the first statement in the preceding sentence would be virtually to hold that property on sale could not be mortgaged, which, we have seen, is not the law. As to the second statement in that sentence, it may be observed that the mortgagee might entertain such expectation consistently with the full protection of all parties concerned, and this without assuming the impossible burden of keeping in touch with possible purchasers of the property, and notifying them personally that the property was mortgaged. The law Charges the purchaser of mortgaged personalty with knowledge of the mortgage from the mere fact of registry, and this notice, to say the least, is equivalent to actual notice. It is the duty of the prospective purchaser to examine the mortgage records to ascertain whether the property he intends to purchase is mortgaged, if he desires to guard against a mortgage. The purchase of an automobile is not even so ordinary an occurrence by a particular individual as to make it especially burdensome for him, before consummating the purchase, to examine the records to ascertain whether the automobile is mortgaged. The facts in this record, it may be said, do not disclose that plaintiff is estopped to assert his mortgages.
 

 It was also urged, though it was not pleaded, that, after'plaintiff knew that these two cars had been sold, he accepted a mortgage on real estate belonging to defendant’s president and another on personal property belonging to defendant, including used automobiles, for this and other indebtedness due him by defendant, and that the taking of these mortgages had the effect of ratifying what defendant had done, of novating the indebtedness secured by the chattel mortgages, involved in this case, and of destroying those mortgages. It .suffices to say, however, that-the two mortgages referred to were taken to secure notes accepted as collateral to the present and to other indebtedness, and that there is nothing in the record showing that the present indebtedness was novated, or that the chattel mortgages, securing it, and involved herein, were extinguished, or that the right to assert them was, by the acceptance of the collateral, in any manner affected.
 

 Interveners also urge that no service of legal process, in the lower court, was made on defendant. They, however, have no interest in raising that question.
 

 The judgment of .the lower court was in
 
 *423
 
 favor of Interveners. The judgment should he reversed.
 

 For these reasons, the judgment appealed from is annulled and set aside, and judgment is now rendered rejecting said interventions and dissolving said writs of injunction, the interveners to pay the costs of their interventions in both courts.
 

 ST. PAUL, BRUNOT, and THOMPSON, JJ., dissent.