## PIONEER NATIONAL BANK OF DULUTH v. RUDOLPH JOHNSON.[1]

June 4, 1943.

No. 33,459.

*Henry Paull* and *Henry J. Grannis,* for appellant.
*Gerald A. Myles,* for respondent.

HENRY M. GALLAGHER, CHIEF JUSTICE.

This is an action in replevin to recover possession of a Chevrolet sedan included in a chattel mortgage given to plaintiff bank by one Emmet Beaudin, a secondhand car dealer, who sold the automobile to defendant. The case was tried to the court and resulted in findings and conclusions for plaintiff. Defendant's motion for amended findings or a new trial was denied, and he appeals from the judgment determining that plaintiff is entitled "to the possession" of

[1]Reported in 9 N. W. (2d) 760.

the automobile "for the purpose of foreclosing" the mortgage.

Plaintiff acquired ownership of the Chevrolet and of another car by repossession from persons not here involved. September 22, 1941, it sold the two automobiles to Beaudin for $1,000 and took in payment Beaudin's note for that amount secured by a chattel mortgage, which it filed for record in the office of the city clerk of Duluth on September 24. November 4, Beaudin sold the car to defendant, who purchased in good faith, for a valuable consideration. The purchase price was $650, and defendant paid all but $25 thereof before he learned of the mortgage.

Defendant contends that plaintiff authorized the sale and thereby estopped itself from asserting any claim under its mortgage. There are other points raised by defendant, but this one appears to raise the crucial question.

The facts are not seriously in dispute, but there is sharp contention between the parties as to the conclusions to be drawn therefrom. Before the car was sold by plaintiff to Beaudin, it was in the possession of one Lee, an employe of the bank, whose duties included the checking of automobiles in Beaudin's car lot upon which the bank held mortgages. He had been authorized by Mr. Peyton, president of the bank, to sell both cars covered by the mortgage here involved and had advertised them in a Duluth newspaper. Lee testified that a day or two before the ad had "run out" Peyton told him that the cars had been sold to Beaudin. It appears that he asked Peyton "if we could let the ad run out" and that Peyton said, "You make that arrangement between you and Mr. Beaudin." Lee retained possession of the Chevrolet and continued to use it in connection with the bank's business. The other car he turned over to Beaudin, who put it on his used car lot. A couple of days before November 4, Beaudin asked Lee to bring the car to him, that "he had somebody who was going to look at the car. * * * Somebody that might like to buy it." Lee thereupon brought in the car and delivered the keys to Beaudin, in whose name the car was registered. Lee had no further connection with the automobile, except that on December 1, 1941, he went with Beaudin to defend-

ant's residence to make an inspection of it as part of his checking duties. This was the day Beaudin notified the bank that he had sold the car to defendant. Lee testified that at some time after turning the car over to Beaudin he saw it on defendant's car lot. His inspection card indicated that he had checked the car on November 2 or November 20; but he could not remember which was the correct date.

Beaudin, called by defendant, was asked what arrangements he had with the bank for the financing of cars, including the one in question. He testified:

"Well, if I was to buy a car I would write a check on my checking account, and then I would borrow the money on a chattel mortgage, get the money in cash and deposit that in my checking account to cover the checks that I used to buy the car with. *Then if the car was sold, I would eventually pay it off in the same manner."* (Italics supplied.)

The court then inquired:

"You mean after you got the check in payment of the car, you would deposit that check to your checking account and then you would write a check on your checking account in favor of the Pioneer National Bank?"

Beaudin answered: "That is right." He also testified that he had informed the bank that he was "going to try to resell the cars." Beaudin did not tell any representative of the bank to whom he was selling the car, nor did he notify it of the sale until about December 1. He did not apply any of the purchase price toward payment of the mortgage.

The bank held mortgages on practically all the cars kept by Beaudin on his used car lot; and the arrangement in all cases was undisputedly as testified to by Beaudin. It compels the conclusion that the bank consented to Beaudin's selling of the mortgaged cars, including the one here involved.

Secret liens against personal property in the hands of a dealer have never been favored in the law and were formerly regarded as

fraudulent *per se* as to creditors and subsequent purchasers. 73 A. L. R. 237. With the growth of the credit system, it was found necessary to provide some way by which a dealer could display his wares and at the same time afford protection to his financial backer. The recording acts were devised and adopted in various forms throughout the country. Minn. St. 1941, § 511.01 (Mason St. 1927, § 8345), declares:

"Every mortgage of personal property shall be void, * * * unless * * * executed in good faith, * * * and unless, in addition thereto, the giving of such mortgage is accompanied by immediate delivery, * * * or, in lieu thereof, the mortgage is filed as hereinafter provided."

By complying with the statute, a mortgagee may relinquish possession of the chattel to the mortgagor, and the proper filing or recording of his lien operates as constructive notice of his rights in it.

Difficulties arise when the mortgagor has not only possession but also the right and power to sell. Other courts have frequently held in such situations that "by consenting to a sale and the collection of the proceeds by the mortgagor, the mortgagee surrenders his lien and looks to the mortgagor personally for the payment of the mortgage debt." Moffett Bros. & Andrews Commission Co. v. Kent (Mo.) 5 S. W. (2d) 395, 400; Minneapolis Threshing Mach. Co. v. Calhoun, 37 S. D. 542, 159 N. W. 127; Maier v. Freeman, 112 Cal. 8, 44 P. 357, 53 A. S. R. 151; First State Bank v. Independent Coöp. G. & M. Co. 115 Kan. 604, 223 P. 1089; Harding v. San Saba Nat. Bank (Tex. Civ. App.) 13 S. W. (2d) 121; Cloutier v. Devereaux, 100 Vt. 187, 136 A. 28; State ex rel. Cantley v. Akin, 224 Mo. App. 114, 22 S. W. (2d) 836; Bernhagen v. Marathon Finance Corp. 212 Wis. 495, 250 N. W. 410.

Contrary to the above holdings is Palmisano v. Louisiana Motors Co. Inc. 166 La. 416, 117 So. 446, cited by plaintiff, which held that a duly recorded chattel mortgage given by an automobile dealer would prevail against a good faith purchaser even though the dealer had authority to sell. There are other cases tending to follow the

reasoning of the Palmisano case. See 97 A. L. R. 668. Although the question here involved has not been directly decided by this court, we are committed to the rule that a chattel mortgagor in possession with the power and authority to sell may transfer good title to a subsequent purchaser for value. Partridge v. Minnesota & Dakota Elev. Co. 75 Minn. 496, 78 N. W. 85; Fairweather v. Nelson, 76 Minn. 510, 79 N. W. 506; First Nat. Bank v. Wiggins, 154 Minn. 84, 191 N. W. 264; First & Farmers State Bank v. Crosby, 191 Minn. 566, 256 N. W. 315. The rule applies regardless of whether the purchaser had notice of the mortgage. Partridge v. Minnesota & Dakota Elev. Co.; First Nat. Bank v. Wiggins; and First & Farmers State Bank v. Crosby, *supra*. Thus, where a mortgagor has possession plus an unconditional power of sale, the recording act is ineffectual to limit the title the mortgagor can transfer to a purchaser for value. 73 A. L. R. 238, and cases cited. Whether the evidence shows that the mortgagee consented to the mortgagor's selling of the chattel is ordinarily for the jury. Partridge v. Minnesota & Dakota Elev. Co. *supra*. However, where it is conclusively established that there was such consent, the court will so hold as a matter of law. First & Farmers State Bank v. Crosby, *supra*.

In the instant case the evidence compels a finding that the mortgagee consented to a sale of the automobile in question. Such authority was not conditioned upon Beaudin's holding the purchase price for the benefit of the mortgagee. Beaudin's testimony is undisputed; in fact, it is supported by the testimony of Mr. Peyton of the bank. It shows that Beaudin customarily deposited amounts received from the sale of automobiles to his personal checking account. Thereafter he would write a check on his checking account and apply it toward payment of his mortgage indebtedness. There is nothing in the record that the bank ever knew to whom the cars were sold, yet it knew of the custom and acquiesced therein.

The rule here applied represents by far the weight of authority. 97 A. L. R. 660. To us it seems favored by the weight of reason and practicability, under a statute such as ours. The mere device

of recording cannot, under the statute as it is, be applied to abrogate all the rules of actual and apparent authority and ostensible ownership. Bernhagen v. Marathon Finance Corp. 212 Wis. 495, 250 N. W. 410.

Reversed.