AUGUST ENDRESON v. LARS M. LARSON and Others.[1]

June 28, 1907.

Nos. 15,217—(189).

**Chattel Mortgage—Innocent Purchaser.**

A purchaser of grain from the mortgagor, without any knowledge that it was mortgaged, except constructive notice by the record of the mortgage, is not protected as an innocent purchaser by the mere fact that the mortgagee permitted the mortgagor to thresh and sell the grain.

**Seed Grain Note—Second Mortgage.**

A. executed and delivered to B. a seed grain note, in consideration of which B. agreed to purchase and deliver to A. the amount of seed grain specified in the note, and within a reasonable time thereafter B. caused the seed grain to be delivered to A. *Held*, the seed grain note having become a first lien upon the crop grown therefrom, as against the claim of a second mortgagee, the purchaser of the wheat from A. was justified in paying it. *Held* error to exclude the note and evidence of its payment from the jury.

**Foreclosure of Mortgage—Application of Proceeds of Sale.**

That provision of section 4465, R. L. 1905, which refers to the application of the amount received upon a real-estate mortgage foreclosure sale, is intended for the benefit of the mortgagor and mortgagee, and a failure to apply the proceeds as directed by the statute does not invalidate the foreclosure, nor by operation of law cancel the first note; the amount received at the sale not being sufficient to pay the entire debt.

Action in the district court for Wilkin county to recover $465 for the conversion of grain. No other defendant than the St. Anthony & Dakota Elevator Company answered. The case was tried before Flaherty, J., and a jury, which rendered a verdict in favor of plaintiff for $324.12. From an order denying a motion for judgment notwithstanding the verdict or for a new trial, defendant elevator company appealed. New trial granted on condition.

*Wilson & Mercer,* for appellant.

*F. W. Murphy* and *Thomas Kneeland,* for respondent.

[1]Reported in 112 N. W. 628.

101 M.—27

LEWIS, J.

Action in conversion to recover the value of about five hundred bushels of wheat raised by one Larson during the season of 1905 on eighty acres of land in Wilkin county, upon which respondent held a chattel mortgage. The answer is a general denial. The chattel mortgage was dated December 8, 1904, and given to secure a promissory note of $300, of the same date, payable October 1, 1905, and another note of $392.91, of the same date, payable October 1, 1906.

At the trial, the mortgage and the $300 promissory note were introduced in evidence. Respondent, testifying in his own behalf, stated that he resided about thirty miles from the land on which the crop was grown, and that he expected the note to be paid out of the grain on which he held the mortgage. Upon cross-examination he was asked the following questions, among others of like import:

Q. Then it was your expectation that he would sell the crop and pay you your money on the mortgage? * * *

Q. Was it your intention that he should dispose of the crop and then pay his mortgage to you? * * *

Q. You did not take it, or the mortgage securing it, and go to this farm to look after the crop on the farm, did you? * * *

Q. Did you send the note or mortgage to anybody in this county, or to any one at all, at the time the note fell due for collection?

Objection to these questions was made, and sustained, upon the ground that the same were not proper cross-examination and immaterial.

Appellant claims that since the note introduced in evidence matured October 1, 1905, and the grain was not attached until October 14, it was entitled to show, upon cross-examination, that respondent knew there was no barn or granary on the mortgaged land wherein to store the grain, and that no provision had been made for taking care of it; knew there were public elevators within a few miles, wherein it was customary to deposit grain when threshed; knew that the mortgagor had no other way to pay the indebtedness, except by a sale of the mortgaged crop; and knowing that, if delivered by Larson at an elevator, the wheat would become mingled with other wheat, appellant contends

that it follows, from all of these circumstances, if established, that respondent, as mortgagee, had consented that the mortgagor thresh and deliver the grain to the elevator of appellant at Doran. In support of these propositions we are cited to Hogan v. Atlantic Elevator Co., 66 Minn. 344, 69 N. W. 1, and Partridge v. Minnesota & Dakota Elevator Co., 75 Minn. 496, 78 N. W. 85.

Even if permissible to establish this sort of a defense by cross-examination, the facts admitted and sought to be proven would not warrant the implication that the mortgagee constituted the mortgagor his agent for the purpose of disposing of the wheat, and thus relieve appellant from responsibility in receiving it from the mortgagor without inquiry as to the rights of the mortgagee. A purchaser of mortgaged grain from the mortgagor is not permitted to set up the defense that he was an innocent purchaser, simply because the mortgagee did not take proper precautions to protect himself. In the cases cited the facts are, so entirely different as to have no application.

2. As a defense, appellant undertook to show that it had paid off a seed grain note of $121.25, given by Larson for one hundred five bushels of seed grain which was sown on the land in question, and which seed produced the crop upon which respondent claimed a chattel mortgage. The seed grain note was dated March 23, 1905, and ran to the Merchants' State Bank at Breckenridge, Minnesota.

According to the testimony of the bank officers it was executed in pursuance of an agreement between Larson and the bank that they would furnish him the seed grain; that, not having the grain on hand, Larson executed the note with the expectation, pursuant to arrangement, that the bank would cause the wheat to be delivered to him at the Doran elevator, a few miles distant. An order was issued to appellant elevator company at Doran to deliver the wheat to Larson, and in pursuance of such order the wheat was actually delivered to Larson and to his sons. The agent of the elevator company testified that the wheat was hauled away by Larson, and his sons; that he afterwards saw the wheat, or wheat just like it, on Larson's farm; that Larson had no other seed wheat for that season; that it was hard wheat, and that there was none other like it in the country, and it was the same kind as delivered by Larson to the elevator after threshing in the fall. During the examination of the agent it developed that the order issued by the

bank to appellant for the delivery of the wheat to Larson was in writing, and the court struck out all testimony which was in conflict therewith as not being the best evidence, and refused to receive the note in evidence. It was further shown by appellant that out of the wheat delivered to it by Larson in October, 1905, appellant paid the amount of the seed grain note to the Merchants' State Bank at Breckenridge, by issuing a check of $115.15 upon the Bank of Doran to the order of Larson, which check Larson indorsed and delivered to the Breckenridge bank. Appellant offered the check in evidence for the purpose of showing the payment, but the court refused to receive it upon the ground that it had not been properly identified. Appellant also offered in evidence an assignment of the seed grain note executed by the Merchants' State Bank at Breckenridge upon receiving the amount due thereon.

The note and check were properly identified and admissible in evidence for the purpose of establishing the fact that the note was a first lien and that appellant had paid it. It is not very material whether the assignment to appellant of the note had the effect of actually transferring the title from the State Bank of Breckenridge. This action was brought against appellant for the conversion of wheat upon which respondent held a mortgage, and if the seed grain note was a first lien upon that wheat it is immaterial to him how it was paid, whether directly by appellant or by the mortgagor Larson. Being a first lien, respondent has no claim against appellant simply because it utilized enough of the wheat to extinguish the debt. "A lien arising upon a crop by virtue of a seed grain note * * * has priority over a lien upon the same crop acquired by means of a previously executed and filed chattel mortgage." McMahan v. Lundin, 57 Minn. 84, 58 N. W. 827. And a chattel mortgage upon a crop not yet planted or sown attaches only to such interest which the mortgagor has on the crop when it comes into being. Simmons v. Anderson, 44 Minn. 487, 47 N. W. 52. The evidence was sufficient to go to the jury upon the question whether or not the seed wheat was delivered by appellant company to respondent Larson and sown on the premises. It does not appear clearly from the rulings what portions of the evidence bearing upon this question were struck out by the trial court; but the court instructed the jury that if the wheat grown on the premises during 1905 was delivered to appellant at Doran, and by it converted to its own use, then respondent was

entitled to recover the value of the wheat to the amount of Larson's indebtedness to it, not exceeding the amount of the note. Therefore it is quite clear that it was the intention of the trial court to remove from the jury all consideration of the seed grain note. In this the court was in error.

Respondent relies on the case of Kelly v. Seely, 27 Minn. 385, 7 N. W. 821, for the rule that the seed grain note in question was void for the reason that the grain was not delivered before or at the time of the execution of the note. In that case a seed grain note was executed for $250 in payment of two hundred fifty bushels of seed wheat, and it appeared from the evidence that only one hundred fifty bushels were delivered at the time of the execution of the note. The other one hundred bushels were not furnished at all by the payee, but sixty bushels were furnished by a third person at a price less than stated in the body of the note. The 1894 statute was modified by R. L. 1905, § 3479: "To secure a loan or purchase of seed grain, the person receiving the same shall execute to the vendor or lender a note or contract containing a statement of the amount and kind of seed, and the terms of the agreement relative thereto. Upon filing the same or a copy thereof, as hereinafter provided, said vendor or lender shall have a lien on the crop grown therefrom." The former statute[2] stated: " * * * The party * * * may at the time of receiving such seed, give a note,'" etc. The transaction under consideration occurred before the law was modified, and hence the revised laws have no application, except to indicate the undoubted tendency in the legislative mind to relax from the strict construction applied in Kelly v. Seely. The reason given for this rule was: "The purpose of the statute being to give the person furnishing the seed lien upon the crop grown therefrom, as against the creditors of the owner of the crop and persons purchasing of him, it may fairly be conjectured that the legislature intended to prevent the privilege thus accorded to the parties to the note or contract from being used as a cover for fraud. They therefore required that the note or contract should be founded upon an actual delivery of seed, and not upon a promise to deliver it; in other words, that it should be founded upon actual value received. * * *"

[2] G. S. 1894, § 4155 (Reporter).

In Wallace v. Palmer, 36 Minn. 126, 30 N. W. 445, the seed grain note was held invalid for the reason that the grain which it purported to secure was not sown upon the premises until the ensuing year, and Kelly v. Seely was cited as authority. There was certainly no occasion to refer to the doctrine of the former case for authority to sustain the latter. In Nash v. Brewster, 39 Minn. 530, 41 N. W. 105, 2 L. R. A. 409, the wheat for which the seed grain note was given was in possession of the vendor at the time of executing the note, but had not been set apart from other wheat, and the claim was made that the seed was not furnished for that reason. The court referred to Kelly v. Seely, but held that title passed as between the parties; no question being raised as to their good faith. In Warder-Bushnell & Glessner Co. v. Minnesota & Dakota Ele. Co., 44 Minn. 390, 46 N. W. 773, after referring to the preceding case, the court said: "But, by requiring that the grain must be furnished by the one and received by the other party to the note or contract, it should not be understood that he who furnishes must in every instance have actual, visible possession of the grain, or that he must carefully measure it out and make a manual delivery thereof to the purchaser or borrower."

From these cases it will be noticed that the court gradually became impressed with the fact that the rule announced in Kelly v. Seely was too strict for universal application, and that in such transactions it was not practical in all cases to require that the wheat be delivered before, or contemporaneous with, the execution of the note and delivery of the wheat. It will be further noticed that in the two last cases referred to the court recognizes the principle that as between the parties the title will be considered to pass constructively upon the execution of the note, although the transaction was not completed, and the title finally passed until delivery of the grain. We therefore hold that the execution of the note on the 23d of March, pursuant to a contract by which the bank was to furnish Larson one hundred five bushels of seed wheat, and the delivery of the same to him shortly thereafter, constituted one transaction, valid as between the parties to it, and upon delivery of the wheat title in the bank became complete, and, in the absence of fraud, respondent cannot question its validity.

3. Appellant presents as newly discovered evidence the following statement of facts which he claims could not with reasonable diligence

have been discovered at the time of the trial: A payment of $17 was indorsed upon the back of the $300 note, which respondent introduced as evidence of his debt. The fact of this indorsement led to the inquiry by appellant's counsel as to its meaning, and it was disclosed there had been a previous foreclosure of a real estate mortgage which had been given to secure the same notes. Appellant now claims as a ground for a new trial that at such real-estate foreclosure proceedings the premises were sold in one tract, and upon default of payment of the first note, and before the second note was due, the proceeds, under the provisions of section 4465, R. L. 1905, should have been used in payment of the first note, and for that reason the note in question was paid and satisfied. We are clearly of opinion that the point is not well taken, for the reason that the statute mentioned is merely for the benefit of the mortgagor and the mortgagee, and the irregularity, if any, in applying the proceeds in payment of the second rather than the first note did not in any way invalidate the foreclosure proceedings. In any event a debt remained to the extent of $324, and it does not concern appellant that the second rather than the first note was canceled.

A new trial is granted, unless, within twenty days from notice of the filing of the remittitur in the trial court, respondent serves notice of his intention to accept a modification of the verdict by deducting therefrom the amount paid by appellant to cancel the seed grain note, with interest.