(February 7, 1912.)

# C. E. SAXTON, Respondent, v. F. M. BRESHEARS, Sheriff of Canyon County, Appellant.

## [121 Pac. 567.]

CHATTEL MORTGAGE—CLAIM AND DELIVERY—AUTHORITY TO SELL MORT-GAGED PROPERTY—WAIVER OF MORTGAGE LIEN—CONTRACT—EXECU-TORY.

(Syllabus by the court.)

1. Where N. and wife gave to F. two chattel mortgages on a growing crop of hay to secure the payment of two promissory notes, and the mortgagee authorized the mortgagor to sell the mortgaged property and to apply the proceeds on said notes, and a few days after the mortgages became due, N. entered into a contract with S. to sell him the mortgaged hay at eight dollars per ton, whereby the hay was to be baled and placed on board the cars, S. reserving the right to reject any and all of said hay, and payment therefor to be made when hay was accepted, and S. paid $100 on said contract, and thereafter a dispute arose between S. and N. as to which one must pay the expense of baling the hay, and such dispute continued from December 24, 1908, to April 9, 1909, when a written contract was entered into for the sale of said hay, whereby the purchaser was to pay $5.25 per ton on board the cars at Nampa, the purchaser reserving the right to reject any and all of such hay that was not first class, and on the 17th of March, 1909, the mortgagee commenced the foreclosure of said mortgages and the sheriff took possession of said hay, *held*, that an action in claim and delivery by said pur-chaser cannot be maintained for the possession of said hay, as under either of said contracts he was not entitled to the possession thereof until the same was delivered on board the cars.

2. Under the provisions of sec. 4272, Rev. Codes, where a delivery of personal property is claimed in an action, it must appear that the plaintiff is the owner of the property claimed or is entitled to the possession thereof, and that the property is wrongfully detained by the defendant.

3. Where the mortgagee authorizes the mortgagor to sell the mortgaged property, such authority is not a waiver of the mortgage lien until the mortgagor has made a valid contract for the sale of such hay, and the mortgagee may revoke such authority at any time before a valid sale is made.

4. *Held,* under the facts, that the minds of the purchaser and the mortgagor did not meet on the alleged contract of sale of December 24, 1908, and that the mortgagee revoked such authority to sell prior to the contract of April 9, 1909.

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon. Ed. L. Bryan, Judge.

Action in claim and delivery to recover certain hay. Judgment for the plaintiff. *Reversed.*

R. B. Scatterday, and Chas. F. Koelsch, for Appellant.

Plaintiff did not have title. He was to pay for the hay upon delivery, and he never at any time tendered payment, which was an express condition precedent to the passing of title. (12 Current Law, 1721, citing *Berlaiwosky v. Rosenthal,* 104 Me. 62, 71 Atl. 69; *Sharp v. Hawkins,* 129 Mo. App. 80, 107 S. W. 1087; *N. W. Bank v. Silberman,* 154 Fed. 809, 83 C. C. A. 525; *Hilmer v. Hills,* 138 Cal. 134, 70 Pac. 1080; *Cardinell v. Bennett,* 52 Cal. 476; *Blackwood v. Cutting Packing Co.,* 76 Cal. 212, 9 Am. St. 199, 18 Pac. 248; *Masoner v. Bell,* 20 Okl. 618, 95 Pac. 239, 18 L. R. A., N. S., 166; *Drake v. Scott,* 136 Ala. 261, 96 Am. St. 25, 33 So. 873.)

The mere giving of earnest will not operate to pass the title when otherwise the contract is such that title would not have passed. (24 Ency. L., 2d ed., 1045–1047; *Sharp v. Hawkins,* 129 Mo. App. 80, 107 S. W. 1087; *N. W. Bank v. Silberman, supra; Bailey v. Dennis,* 135 Mo. App. 93, 115 S. W. 506.)

So long as something remains to be done, such as the ascertainment of the price, or quantity, title does not pass. (*Caruthers v. McGarvey,* 41 Cal. 15; 12 Current Law, 1720, and cases cited; *McLaughlin v. Piatti,* 27 Cal. 452; *N. E. Dressed Meat etc. Co. v. Standard etc. Co.,* 165 Mass. 328, 52 Am. St. 516, 43 N. E. 112; Benjamin on Sales, c. 3.)

The plaintiff, while a witness on his own behalf, not only claimed that he had reserved the right to reject any hay that, upon offer of delivery, was, in his judgment, not of good quality, but that he actually exercised that privilege. Under

such an agreement of sale title does not pass until acceptance by the buyer.　(12 Current Law, 1722; *Bray Clothing Co. v. McKinney,* 90 Ark. 161, 118 S. W. 406.)

. W. A. Stone, E. J. Dockery, and G. W. Lamson, for Respondent.

The lien of a mortgage can be waived by the mortgagee, either orally or in writing.　(*Knollin & Co. v. Jones,* 7 Ida. 466, 63 Pac. 638; *Partridge v. Minn. & Dakota Elevator Co.,* 75 Minn. 496, 78 N. W. 85; *N. E. Mortgage Security Co. v. Great Western Elevator Co.,* 6 N. D. 407, 71 N. W. 130; *Fairweather v. Nelson,* 76 Minn. 510, 79 N. W. 506; *Peterson v. St. Anthony Elevator Co.,* 9 N. D. 55, 81 Am. St. 528, 81 N. W. 59; Jones on Chattel Mortgages, 3d ed., sec. 457.)

SULLIVAN, J.—This is an action in claim and delivery, whereby the plaintiff seeks to recover from the defendant the possession of one hundred tons of hay.　The following facts appear from the record:

In the early summer of 1908, one E. C. Norton and his wife gave two chattel mortgages on a growing crop of hay to secure the payment of their two certain promissory notes for the aggregate principal sum of $502.50, which notes became due on December 15, 1908.　Said mortgages were duly recorded, the first, on June 15, 1908, and the second, on September 25, 1908.　During the summer of the same year, through oral conversations and letters, the mortgagor, Norton, claims that he received from the mortgagee authority to sell the mortgaged hay, and if he did sell it, he was to deposit the proceeds in a bank at Caldwell to the credit of the mortgagee. On December 24, 1908, a few days after the maturity of said notes and mortgages, the plaintiff, who is respondent, negotiated with the mortgagor Norton for the purchase of the hay covered by said mortgages.　It appears that said hay was a part of one large stack containing 131 tons, situated on the premises occupied by said Norton under a cropping lease; that $100 was paid down at that time on the purchase price, and thereafter a dispute arose in regard to which of the contract-

ing parties 'must pay for baling the hay. Norton claimed that under said contract he was to receive eight dollars, net, per ton for said hay, delivered on the cars at Caldwell, and that Saxton was to pay for the baling, while Saxton contended that eight dollars per ton included the charges and cost of baling. It seems that dispute between the parties caused a delay in the carrying out of said agreement, and that the controversy as to who should bale the hay was not settled between the parties until about the 9th of April, 1909, when it was agreed that the hay should be delivered at Nampa instead of at Caldwell, and that Norton was to receive $5.25 per ton, net, therefor, and to receive two dollars per ton for placing the hay on the cars. On March 17, 1909, at which time none of the hay had been delivered under the agreement with Saxton, the mortgagee commenced proceedings to foreclose his mortgages, and the defendant, who is appellant, as sheriff of Canyon county, under said foreclosure proceedings, took possession of said hay on said 17th day of March. Under that state of facts, on April 13, 1909, plaintiff commenced this action, claiming ownership and right to the possession of said hay. Answer was filed by the defendant sheriff, denying the allegations of the complaint as to plaintiff's ownership and right to the possession of said hay, and also setting up the facts under which he, as sheriff, took possession of said hay.

The cause was tried by the court without a jury and the court found, among other things, that prior to the 24th of December, 1908, said mortgagee had given to said Norton both parol and written authority to sell and dispose of the hay described by said chattel mortgages; that on said day he entered into a valid agreement with the plaintiff whereby one hundred tons of the hay described in said chattel mortgages were sold to the respondent Saxton; that on said date said Saxton paid said Norton $100 on the purchase price of said hay and agreed to pay the balance on the delivery of the hay; that at the time of the commencement of this action the sheriff was in the possession of the baled hay described in the complaint, under the direction of the mortgagee, or his attorney, and at that time the plaintiff was entitled to the possession of the

baled hay described in the complaint; and as conclusions of law found that by reason of the permission and authority given to said Norton by the said mortgagee to sell the hay, the mortgagee waived and lost the lien of his said mortgages upon the hay so sold and that said lien having been so lost, all the steps and proceedings taken by the mortgagee and the sheriff to foreclose said mortgages were illegal and void, and that the plaintiff was entitled to the possession of said baled hay and entered judgment accordingly.

This appeal is from the judgment.

This being an action in claim and delivery, in order to recover the plaintiff must show that he is the owner or entitled to the possession of the property, and that the property is wrongfully detained by defendant. (Sec. 4272, Rev. Codes.) There no doubt was some conversation between the mortgagee and the mortgagor in regard to the mortgagor's selling the hay and applying the proceeds on the mortgage indebtedness. These conversations were had some time before December 15, 1908, the date when said mortgages became due. The first contract above referred to for the sale of said hay was entered into nine days thereafter, or on the 24th of December. It was not an executed contract, but an executory one. It seems that the minds of the parties did not meet as to all of the provisions of that contract, and no hay was delivered to the respondent. Under the original contract the hay was to have been delivered aboard the cars at Caldwell, the respondent retaining the right to reject any and all of said hay that he did not consider first class, and was not to pay for the same until he had accepted it. Under said foreclosure proceedings, brought on March 17th, the sheriff took possession of said hay before it had been delivered under said contract to the plaintiff, and before he became the owner thereof. While the sheriff was so in possession of said hay, Norton executed said contract dated April 9, 1909, whereby he agreed to take $5.25 net for said hay and to deliver the same aboard the cars at Nampa for two dollars per ton for hauling and putting the same on the cars. After that written contract or bill of sale was entered into, this suit was brought.

The respondent had not paid for the hay nor tendered payment therefor nor accepted the hay, and it had not been delivered to him at the time the suit was brought, and under his contract he had the authority to reject any or all of said hay. Under that state of facts, he was not the owner of said hay nor was he entitled to the possession of it, hence cannot maintain this action. The fact that the mortgagee had given the mortgagor authority to sell the hay and apply the proceeds thereof in payment of his mortgages would not prevent the mortgagee from revoking said authority to sell at any time before a sale was made, and he clearly revoked the authority given to the mortgagor to sell by beginning foreclosure proceedings and placing the sheriff in possession of said hay. Had the mortgagor sold the hay and delivered the same to the purchaser prior to said foreclosure proceedings, the authority to sell could not then have been revoked. The authority to sell did not release the lien of said mortgages, as a valid sale had not been made, and this action could not be maintained unless respondent was entitled to the possession of the hay under a valid contract of sale made prior to the revocation of the mortgagor's authority to sell.

In *Knollin v. Jones,* 7 Ida. 466, 63 Pac. 638, this court held that a sale by consent of the mortgagee waived the lien of the mortgage to the extent of the sale so made. In that case the property had been actually delivered to the purchaser. Counsel for respondent cite, among other cases, *Patridge v. Minn. & D. E. Co.,* 75 Minn. 496, 78 N. W. 85, in support of the contention that authority to sell by the mortgagee releases the mortgage. The only point decided there was that a sale made with the consent of the mortgagee waived the lien where the sale had been consummated and the property actually delivered. They also cite *New England Mortgage M. S. Co. v. Great W. E. Co.,* 6 N. D. 407, 71 N. W. 130. In that case the delivery of the property sold had been actually made in compliance with the contract of sale. The same conditions existed in *Fairweather v. Nelson,* 76 Minn. 510, 79 N. W. 506. In *Peterson v. St. Anthony & D. E. Co.,* 9 N. D. 55, 81 Am. St. 528, 81 N. W. 59, the court said:

"The crucial question is whether the plaintiff, holding a chattel mortgage, authorized the debtor to sell the property at private sale, and whether subsequently thereto such sale was actually made. Of course, a mere consent to a sale, not acted upon in any manner, would not operate as a waiver." (See, also, *Endreson v. Larson*, 101 Minn. 417, 118 Am. St. 631, 112 N. W. 628.)

The decision in that case indicates that that court would not go to the extent of sustaining a mere executory contract, especially where the terms of the sale were not even settled upon between the parties. Now, in the case at bar, the evidence shows that the minds of the parties did not meet upon the contract of sale of December 24, 1908, and that there was a substantial dispute between the parties to the sale as to which one of them should pay for baling the hay, which dispute continued up to the time a new contract was entered into on April 9, 1909, nearly a month after the mortgagee had revoked the authority that he had given the mortgagor to sell said hay.

Under all of the facts, it is clear that this action cannot be maintained for the possession of said hay. The judgment must therefore be reversed and the cause remanded, with instructions to the trial court to enter a judgment of dismissal in favor of the defendant. Costs are awarded to the appellant.

Stewart, C. J., and Ailshie, J., concur.