STATE BANK OF STEPHEN, BY A. J. VEIGEL, v. FARMERS GRAIN COMPANY OF STEPHEN AND ANOTHER.[1]

June 8, 1928.

No. 26,603.

**Chattel mortgage was signed in blank and was not thereafter filled in as authorized.**

1-2. The evidence was sufficient to sustain the verdict.

**Interest of chattel mortgagee in crop not yet planted.**

3. A chattel mortgage on a crop not yet planted or sown attaches only to such interest as the mortgagor has in the crop when it comes into being.

Chattel Mortgages, 11 C. J. p. 444 n. 74; p. 636 n. 76.

See note in 23 L. R. A. 452, 456; L. R. A. 1917C, 11; 5 R. C. L. 407; 1 R. C. L. Supp. 1390; 4 R. C. L. Supp. 327.

Plaintiff appealed from an order of the district court for Marshall county, Grindeland, J. denying its alternative motion for judgment or a new trial. Affirmed.

*A. N. Eckstrom,* for appellant.

*Bernard B. Brett, Julius J. Olson* and *Oscar R. Knutson,* for respondents.

HILTON, J.

Plaintiff appeals from an order denying its alternative motion for judgment non obstante or for a new trial.

This is an action in conversion. Plaintiff claimed title to certain grain of the alleged value of $5,000 by virtue of a chattel mortgage executed by one Pagnac. A verdict was returned in favor of defendants.

Pagnac was indebted to the State Bank of Stephen on two promissory notes, each bearing date November 6, 1923, one for $1,566.79 and the other for $1,500. These notes were secured by

[1] Reported in 219 N. W. 871.

the chattel mortgage referred to, which by its terms covered mortgagor's one-half interest in the 1924 crops to be raised on the lands described therein—about 400 acres in section 27 and 440 acres in section 28, all in the same township in Marshall county. Because of a typographical error, section 28 was mentioned instead of 26. During the trial it developed that the only grain involved was that raised on the land in section 27, which for many years had been, and at the time of the giving of the chattel mortgage was, owned jointly by Pagnac and defendant Meloney. Meloney owned other nearby lands which were worked by Pagnac for him.

Under an arrangement as to the cropping of the partnership land, Meloney had for several years furnished the horses, machinery, seed and feed, and Pagnac had done the work; an equal division was made of the crop. The grain raised in 1924 on the land in section 27 was sold and delivered by Meloney to the defendant grain company, demand made by plaintiff therefor and refused. Plaintiff (commissioner of banks) closed the State Bank of Stephen for liquidation purposes and brought this suit. Meloney claimed sole ownership of the grain in question and that Pagnac never had any interest therein. The evidence shows that in the spring of 1924, before any grain was sown, Pagnac and Meloney made a settlement of all their partnership matters. Pagnac deeded to Meloney his one-half interest in the land, gave him a chattel mortgage on two cars, and entered into a contract of employment whereby Pagnac was to receive from Meloney $1,500 a year for working the farms. Fuller details as to this settlement will appear later. A claim was also made by the defense that the chattel mortgage to the bank was null and void; that it was signed by Pagnac in blank, to be filled out in a certain way, and that this was not done.

The evidence was conflicting in many respects. We have considered the errors assigned as to the admission of evidence and as to certain portions of the charge of the court. We find no error therein. The matters to be determined may be properly stated as follows: 1. Was the chattel mortgage here involved signed in blank or was it a completed instrument? If signed in blank, was

it subsequently completed by Gillespie (president of the bank) as authorized by the mortgagor, Pagnac? 2. Was the conveyance of the partnership land by Pagnac to Meloney a bona fide transaction, or was it the cover for a secret arrangement, conceived and intended by these men to hinder, delay or defraud the creditors of Pagnac? 3. What was the legal effect of the chattel mortgage upon the 1924 crop, as to the present defendants, if in fact the transfer of Pagnac's interest in the partnership was genuine?

1. The questions above referred to under subdivision 1 were for the determination of the jury. The evidence was in serious conflict. However there was sufficient to warrant an answer that the chattel mortgage was signed in blank and was not a completed instrument, and that it was not afterwards completed as authorized by the mortgagor.

2. There was ample evidence to sustain the bona fides of the settlement made between Meloney and Pagnac. The farming enterprise into which Meloney and Pagnac had entered did not prove successful. The partnership farm was purchased for $43,200, of which $10,000 was contributed jointly. A further payment of $3,500 was made thereon. Commencing with the year 1920 and continuing thereafter the burden of carrying the property fell upon Meloney, and he thereafter made the subsequent payments, and an unpaid balance of $14,000 remained in the form of two mortgages. Pagnac was indebted to him for advances made in his behalf. Pagnac was also indebted to the State Bank of Stephen. He became discouraged and contemplated going through bankruptcy. On advice of his attorney, he took the matter up with Meloney in order to arrange a settlement of his affairs. Pagnac had no real equity in the partnership property, and the turning over of his interest in the farm still left him indebted to Meloney in the sum of $1,875. To secure that sum he executed a chattel mortgage on a touring car and a Ford roadster. There was no attempt to conceal this settlement, which was made and the papers executed and delivered early in March, 1924, long before any grain was sown.

Meloney, shortly after getting the deed, attempted to have it recorded, remitting for half of the taxes. Record could not be made

of it without paying the full amount of taxes for the year. Being hard pressed for money, there was a delay in recording the deed. It was however finally recorded on June 27, 1924, as was also the partnership dissolution, the chattel mortgage and the bill of sale of the partnership personal property. From the facts thus above recited and other circumstances evidencing a bona fide intent, the jury was amply warranted in answering the second question in the affirmative.

3. The chattel mortgage given to the bank in November, 1923, by its terms covered Pagnac's share of the crop to be raised in 1924 upon the lands in question. Because of the settlement and arrangement made between Meloney and Pagnac, the latter had no interest whatever in the crop. There was nothing upon which the chattel mortgage attached. It could attach as a lien only on the interest which the mortgagor might have in the crops when they came into being. Simmons v. Anderson, 44 Minn. 487, 47 N. W. 52; McMahan v. Lundin, 57 Minn. 84, 58 N. W. 827; Christianson v. Nelson, 76 Minn. 36, 78 N. W. 875, 79 N. W. 647; Endreson v. Larson, 101 Minn. 417, 112 N. W. 628, 118 A. S. R. 631; 11 C. J. 443, § 51.

Order affirmed.