G. M. McCARTHY v. ALBERT THORSON AND ANOTHER.[1]

January 23, 1931.

No. 28,303.

J. A. Lee and Fosnes & Rolloff, for appellant.
Ozro Yakey, for respondents.

[1]Reported in 234 N. W. 591.

Holt, J.

The complaint alleged that plaintiff, on May 5, 1928, loaned one Albert Jaeger $130 for the purpose of purchasing 100 bushels of seed wheat, and sold him 120 bushels of seed oats at 60 cents per bushel and 35 bushels of seed barley at $1 per bushel, to be sown on a 280-acre farm in Swift county; and Jaeger on that day executed a seed grain note therefor, wherein the farm was duly described; that the grain so specified therein was actually sown on said land during the season of 1928, and there was raised therefrom 965 bushels of wheat, 1,700 bushels of oats, and 210 bushels of barley; that the note was not paid; and that defendants in September, 1928, wrongfully took possession of the wheat, barley, and oats and converted the same to their own use. The answer was a general denial. The findings and conclusion of law were in favor of defendants, and from the judgment entered thereon plaintiff appeals.

There is no settled case. There was no motion for a new trial. So the only question for decision is whether the findings of fact, taken in connection with the pleadings, sustain the judgment of "dismissal with prejudice."

The findings cover facts not suggested by the pleadings. Thus it was found that defendant Thorson owned the farm and leased it for the farming seasons of 1927 and 1928 to Albert Jaeger; that in April, 1927, Jaeger was indebted to plaintiff in the sum of $1,553.60 and gave a chattel mortgage on certain personal property and also on the grain to be raised on the farm in 1927; that Thorson furnished the seed grain for the 1927 crop and took Jaeger's seed grain notes therefor in the sum of $354.79; that on February 6, 1928, the seed grain notes for the 1927 crop not having been paid, Jaeger gave Thorson a chattel mortgage on the 1928 crop to secure that note, and Thorson advised Jaeger he might keep the grain raised in 1927, returning to him the seed grain notes given as above; that in the spring of 1928 Thorson refused to furnish Jaeger seed grain, and plaintiff told Jaeger to sell the hogs covered by plaintiff's chattel mortgage and buy seed therewith; that he did so and realized $170 for the hogs and $20 for a calf and bor-

rowed $40 from his brother Ernest Jaeger, and with this money he bought $100 worth of seed wheat from one Simonsted and got seed oats from his brother Ernest and defendant Thorson and used oats and barley from the 1927 crop, all of which was sown on said farm in 1928; that there was raised on the farm in 1928, 965 bushels of wheat, 1,500 bushels of oats, and 211 bushels of barley and that this "grain was divided and put in separate bins and some hauled direct to the elevator; that the J. J. Lang Elevator Company issued a check to Jaeger & Thorson in the sum of $230.00 for wheat hauled to said elevator." So far of course there is nothing upon which plaintiff can claim a recovery. But the findings also contain this: "That on the 5th day of May, 1928, said Albert Jaeger gave to plaintiff a seed grain note in the sum of $237.00 for the seed sown on said farm during the year 1928"; that the note was duly filed on the 7th of May, 1928, and that plaintiff has made demand of defendants for the amount of the note.

There is no finding connecting defendant Lang with any grain raised on the farm by Albert Jaeger. Without either pleading or finding, it cannot be assumed that he is the J. J. Lang Elevator Company or is doing business under that name. So defendant Lang is certainly entitled to a judgment of dismissal.

It is not so clear that this conclusion of law embodied in the judgment is justified by the findings of fact, viz:

"That the seed grain note given by Albert Jaeger to the plaintiff, G. M. McCarthy, is not a valid or prior lien to the chattel mortgage given by the said Albert Jaeger to the defendant, Albert Thorson, on the 6th day of February, 1928."

The learned trial court does not state or intimate how this conclusion was arrived at. Assuming that Thorson's chattel mortgage was filed about the time it was given, though there is no finding as to that, still the seed grain note to plaintiff became a lien superior to Thorson's prior chattel mortgage upon grain grown from the seed furnished pursuant to the seed grain note. McMahan v. Lundin, 57 Minn. 84, 58 N. W. 827; Endreson v. Larson, 101 Minn. 417, 112 N. W. 628, 118 A. S. R. 631; Massey-Harris Harv.

Co. Inc. v. Moorhead Farmers Elev. Co. 176 Minn. 90, 222 N. W. 571. If the wheat delivered to the J. J. Lang Elevator Company for which it paid $230 to Thorson and Jaeger was grown from the seed wheat furnished by plaintiff under the seed grain note obtained from Jaeger May 5, 1928, the judgment as to Thorson is wrong in so far as there is a dismissal. There is no finding that Thorson had anything to do with the 1928 crop of this farm unless it be the participation in the proceeds of the $230 worth of wheat sold to the elevator company. But there is no finding that the wheat for which Thorson received this money was grown from the seed wheat plaintiff furnished. The seed grain lien is confined to the crop grown from the seed furnished by the holder of the seed grain note. G. S. 1923 (2 Mason, 1927) § 8373. The findings are that $100 worth of seed wheat bought from Simonsted was sown on this farm, and there is no way of telling whether the wheat grown therefrom, and upon which Thorson had the chattel mortgage, was the wheat delivered to the elevator, for which Thorson and Jaeger got the check, or whether it was grown from the seed wheat plaintiff furnished.

Were the party who obtained the seed grain and gave the note the one charged with conversion of the crop, it might well be held that his would be the burden of proving that the grain he received or got the proceeds from was not grown from the seed obtained from the payee in the seed grain note. He got the seed grain to raise a crop therefrom on certain land. He, having possession of both the seed grain and the land, should know and be able to prove what crop was produced from that seed and also what crop, if any, was grown on that land from other seed. And good faith and honest dealing with the holder of any seed grain note would require him not to mix the crop grown from the seed grain furnished under that note with crops grown on that land from other seed. But here defendant Thorson was not in possession of the land, had never had possession of the 100 bushels of seed wheat plaintiff furnished May 5, 1928, and, so far as this record goes, knew nothing as to where it was planted. Defendant Thorson is connected only

with $230 worth of wheat from the 1928 season's crop, and $100 worth of seed wheat was sown by Jaeger on the farm in the spring of 1928 bought of one Simonsted, besides the 100 bushels of wheat represented by plaintiff's seed grain note. Having charged Thorson with wrongful conversion of this $230 worth of wheat, plaintiff, in order to have a judgment therefor, must have findings showing that the particular wheat for which Thorson received pay was wheat grown from the 100 bushels of seed wheat plaintiff furnished under Jaeger's seed grain note. The findings do not so show. The findings, in other words, do not show Thorson to have converted any wheat upon which plaintiff's seed grain note is a lien, and the conclusion of law that said note is not valid or prior to Thorson's chattel mortgage is really not necessary to support the judgment in favor of respondents.

The judgment is affirmed.