PRO-VID-ALL MILLS, INC. v. CARGILL, INCORPORATED.

142 N. W. (2d) 290.

April 22, 1966—No. 39,698.

*Dorsey, Owen, Marquart, Windhorst & West* and *Bernard G. Heinzen,* for appellant.

*Olson & Nelson* and *Wendell Nelson,* for respondent.

NELSON, JUSTICE.

In this action to determine which of two mortgageés is entitled to the proceeds of the sale of a flock of turkeys, defendant, Cargill, Inc., appeals from an order denying its motion for a new trial and from paragraphs 2, 3, and 5 of the judgment entered. Plaintiff, Pro-Vid-All Mills, Inc., also seeks review of the order denying its motion for a new trial and of paragraph 1 of the judgment.

Prior to July 15, 1961, Harold Elling, who was engaged in raising turkeys in Kanabec and Mille Lacs Counties, had been financed in his operations by Nutrena Mills, Inc., then a subsidiary of Cargill. (Since these corporations merged December 31, 1962, we will refer to either as defendant hereinafter.) For the advances made, defendant obtained chattel mortgages mortgaging the turkeys purchased, "together with in-

creases thereof, being all the chattels of like kind owned by mortgagor"; all feeds and grains purchased by Elling out of moneys advanced by defendant "which Mortgagor may now have or hereafter acquire"; and "[a]ll other personal property of like kind * * * hereafter acquired by Mortgagor until all indebtedness secured by this mortgage is paid." Defendant filed its mortgages for record in March, April, and June 1961. At the time of the trial Elling owed defendant $4,011.38 plus interest, which was secured by two of the mortgages he had given defendant.

In June 1961 Elling conferred with Mr. Chuck Froehle (now deceased) of Chuck's Hatchery, Inc., who sold products of both defendant and plaintiff, and Mr. John Norblom, president of plaintiff, relative to obtaining financing for future turkey raising from plaintiff. Elling then told Norblom that he owed defendant approximately $2,000 on a turkey flock purchased March 13, 1961, and sold or harvested on May 31, 1961. It is apparent from the record that Elling still had two flocks left which were being financed by Cargill. Norblom told Elling at that meeting that if Elling switched suppliers, plaintiff would assume his indebtedness to defendant up to $2,000.

Following this meeting Elling applied to plaintiff for financing of the flock of turkeys involved in this action. The application was accepted by plaintiff on June 20, 1961, and on July 15 the hatchery operated by Mr. Froehle delivered 6,900 cross white turkey poults to Elling's farm. On that day Elling signed a promissory note payable to plaintiff for the purchase price of $3,450 and executed a chattel mortgage to plaintiff securing this amount and future advances for feed, medicine, and supplies needed to raise the flock. Plaintiff thereafter made advances totaling $9,688.37 for those needs.

The chattel mortgage executed on July 15, 1961, by Elling to plaintiff described what was to be included in that mortgage as follows:

"The total number of such species to be so mortgaged to the Company during this year, whether covered wholly by this mortgage or partly by earlier or later ones, is estimated at about 6900 X      Whites Started   .

(Number)        (Specie)

This mortgage, besides covering all such species to be acquired later, covers a particular lot recently acquired numbering about

6900   Cross Whites   and hatched or born on or about 7-4-61. The

(Number)   (Specie)

undersigned also hereby mortgages to the company all brooder houses, shelters, roosts, feeders, fountains, other equipment for raising such species * * *: (together with all increase and the increase from the increase of the above property which is all of the kind now owned by me, whether in excess of the specified number or not, and all additions, betterments, and repairs made to or upon the personal property herein-before described, and including all property of a similar kind to that above described which may be hereafter acquired until the debt secured hereby is fully paid.)

"This mortgage secures all promissory notes, not exceeding $17,250.00 in total unpaid principal amount, that may at any time during the next succeeding twelve months be given to the above Company by the undersigned * * * for or in connection with buying Baby Chicks, poults, feed or supplies or for any other purpose * * *. Such notes secured include one particular note for $3450.00, bearing the same date as this mortgage and payable on demand with interest at the rate of 7% per annum."

It is clear that these chattel mortgages were drawn so as to include after-acquired property, although only the mortgage of July 15, 1961, went so far as to specifically include "all increase and the increase from the increase of the above property." The mortgages also secured all future promissory notes not exceeding a certain amount that were to be given during the raising of each specific flock of turkeys.

The record indicates that about November 1, 1961, defendant became concerned about the balance due it from Elling and as a result Mr. Ralph Latchaw, its credit manager, telephoned Mr. Norblom and inquired why defendant had not been paid. Defendant claims Norblom agreed to pay the unpaid account but later advised Latchaw that its bank would not allow plaintiff to pay off the Elling indebtedness.

Upon reaching maturity, the flock financed by plaintiff was sold to Swift & Company for $6,708.59. With defendant's consent, Swift issued a check payable to plaintiff of $2,308.59. Both plaintiff and defendant claiming to be entitled to the balance of $4,400, Swift deposited it with

the clerk of court of Meeker County (where the action was brought) to be distributed pursuant to the court's order.

After trial the court found that plaintiff had agreed to pay up to $2,000 of Elling's indebtedness to defendant and awarded that amount to defendant. Holding that plaintiff's mortgage was a lien upon the proceeds of the sale superior to the liens of defendant's mortgages, it awarded the balance of $2,400 to plaintiff.

Plaintiff contends that all of the deposit should have been awarded to it. It asserts that the discussion with Elling regarding his indebtedness to defendant was casual and did not result in the assumption by plaintiff of any part of such indebtedness. Plaintiff argues also that the mortgage of July 15, 1961, constitutes a first and prior lien upon the flock and secured the advances plaintiff made to bring the turkeys to a marketable stage, as well as their purchase price.

Defendant concedes that plaintiff's mortgage created a first and prior lien for the purchase price of the flock, $3,450. Plaintiff had received $2,308.59 from the proceeds of the sale before litigation, and defendant now admits plaintiff is entitled to the balance of the price, $1,141.41, out of the $4,400 deposited with the clerk. It contends, however, that any lien created by plaintiff's mortgage for its advances for feed, medicine, and supplies is inferior to the liens on after-acquired property created by defendant's earlier mortgages. It argues that future advances made subsequent to execution of a junior mortgage are not "purchase money" and thus are subordinate to the after-acquired property liens of the senior mortgages given it by Elling in March 1961. Defendant further contends that plaintiff's advances to Elling should not receive purchase-money priority because those advances were made for the purchase of chattels which were in the nature of "improvements" to the purchase-money collateral and the concept of purchase money has been defined by the courts to exclude advances for such improvements. Defendant also contends that the advances were not purchase money because they were discretionary under the terms of plaintiff's chattel mortgage and were made when plaintiff had both constructive and actual notice of the prior liens of defendant.

The law appears to be well settled that a senior mortgage containing

an after-acquired property clause takes priority over that part of a junior mortgage which relates to property which is not a "purchase money" interest. In the early Minnesota case of Ludlum v. Rothschild, 41 Minn. 218, 222, 43 N. W. 137, 139, Mr. Justice Mitchell speaking for this court stated:

"* * * We are of opinion that, except in cases prohibited by statute, (see Laws 1887, c. 176,) whenever the parties by their contract in clear terms express an intention to create a positive lien upon personal property, not then owned but to be subsequently acquired by the mortgagor, whether then *in esse* or not, *the mortgage attaches as a lien on the property as soon as the mortgagor acquires it,* as against the mortgagor and all claiming under him either by voluntary transfer or with notice, precisely as if the property had been in being and belonged to the mortgagor when the mortgage was executed." (Italics supplied.)

It is clear, however, that this type of lien does not extend to advances made for the acquisition of the subject of the mortgage, which by its definition enhances, or at least does not detract from, the security of a senior mortgagee. The crux of this case is whether plaintiff has a lien superior to those created by defendant's mortgages for the amounts plaintiff advanced for the feed, medicine, and supplies necessary to bring the turkeys to a marketable state, as well as for their purchase price. There is nothing in the record to indicate that the turkey poults acquired July 15 ate any feed except such as plaintiff agreed to furnish pursuant to the provisions of its chattel mortgage. It is clear that Elling eventually had a flock ready for sale because of plaintiff's advances for necessary supplies and would not have had a marketable flock without them. Under the circumstances the trial court was correct in holding that the lien of plaintiff's mortgage was superior and senior in priority to the liens of defendant's mortgages.

In Annotation, 86 A. L. R. (2d) 1152, 1154, it is said:

"Where the owner of real property, or of both real and personal property, in mortgaging the same, includes a clause expressly covering personalty after-acquired by him, and thereafter he purchases, conditionally or otherwise, personalty coming within the clause, the principle

which applies almost without exception is that the mortgagee under such clause can take no greater interest than the mortgagor himself obtains in the purchase."

See, St. Paul Elec. Co. v. Baldwin Engineering Co. 159 Minn. 221, 199 N. W. 9; Schnirring v. Stubbe, 177 Minn. 441, 225 N. W. 389; Goodrich Silvertown Stores v. A. & A. Credit System, Inc. 200 Minn. 265, 274 N. W. 172. In the Goodrich Silvertown Stores case it was held that one owning a chattel mortgage which covered a truck and after-acquired property attached to the truck took no title to tires and tubes thereafter purchased by the mortgagor and attached to the truck as against a conditional vendor of the tires and tubes who reserved the title thereto. It was further held that that result follows even though the conditional sales contract had not been filed as required by a statute making unfiled conditional sales contracts void "as to creditors of the vendee and subsequent purchasers and mortgagees," since under the statute one is not a creditor unless he has seized the property under legal process.

Other Minnesota cases involving chattel mortgage security which may be helpful are: State Bank of Stephen v. Farmers Grain Co. 174 Minn. 531, 219 N. W. 871; Massey-Harris Harvester Co. Inc. v. Moorhead Farmers Elev. Co. 176 Minn. 90, 222 N. W. 571; First Nat. Bank v. St. Anthony & Dakota Elev. Co. 171 Minn. 461, 214 N. W. 288. See, also, 3A Dunnell, Dig. (3 ed.) § 1429A.

We have carefully considered the cases cited by defendant as controlling. We are unable to find that they justify a reversal here. As we view it, taking into account the nature of the personal property, the nature of the advances made, and the circumstances under which they were made, all advances made to Elling by plaintiff for the purpose of acquiring and raising the flock of turkeys must in fairness be treated as purchase-money interests and the mortgage securing the same must likewise be afforded a purchase-money priority. In fact, as contended by plaintiff, the advances made to Elling were in a sense mandatory by reason of the agreement between it and Elling. It was proper for the trial court to take into account all circumstances and to examine the whole transaction in order to determine the nature of the advances, and

we are bound to conclude upon the record as a whole that the trial court was justified in concluding that the lien of the chattel mortgage in favor of plaintiff upon the flock of turkeys and the proceeds of its sale constituted a first and prior lien superior and senior in priority to the liens of the chattel mortgages of defendant with respect both to the purchase price and to the subsequent advances made by plaintiff.

We conclude, however, that the trial court was justified also in ordering payment to defendant of $2,000 out of the proceeds of the sale since the record supports the finding that plaintiff agreed to pay defendant that amount in consideration of Elling's financing the flock and obtaining the necessary supplies for raising it from plaintiff. Defendant as the third-party beneficiary of this agreement is entitled to that sum. The other findings of fact, the conclusions of law, and order for judgment have ample support in the record, and the judgment entered pursuant thereto is therefore affirmed.

Affirmed.